■ CHARLOTTE K. SCHEER, Respondent, v DANIEL H. KOUBEK, Appellant.—Main, J. Appeal from an amended judgment of the Supreme Court (Keniry, J.), entered February 14, 1986 in Saratoga County, upon a verdict rendered in favor of plaintiff.

In the early afternoon of August 11, 1983, plaintiff was operating a motor vehicle in the Town of Halfmoon, Saratoga County, when the vehicle was struck from the rear by a motor vehicle owned and operated by defendant. The force of the collision was such as to propel the vehicle plaintiff was driving forward and off the highway. While plaintiff felt no immediate serious effects from the accident, the following morning she experienced severe neck, shoulder and left arm pain, and was driven to CHP medical center in Albany County by her husband where she was treated and fitted with a cervical collar and given medication. She subsequently developed back pains. After an extended period of treatment with but mini-

---

mal improvement, plaintiff commenced this action against defendant, contending that his negligence caused the accident and her resulting permanent injuries.

After trial, the jury found that defendant was 73% to blame for the accident and also determined that plaintiff sustained significant limitation of use of a body organ, member, function or systems (see, Insurance Law § 5102 [d]). This appeal ensued. While other issues are raised, defendant's primary argument is that the trial court erred when it denied defendant's motion for a directed verdict by reason of plaintiff's failure to prove that she sustained a serious injury as a result of the accident. We do not agree.

At trial, plaintiff testified that for eight days following the accident, she did not report for work but rested at home because of severe pain to the neck, shoulders and back with accompanying headaches. Because these complaints continued, on August 19, 1983 she consulted with and came under the care of Dr. John Graham, a duly licensed chiropractor, who continued to treat plaintiff up until the time of the trial but on a much less frequent basis for the year and a half prior to trial. Early in her treatment, plaintiff was advised against working at her job as a waitress, but she testified that for economic reasons she felt compelled to work and did so with few exceptions. Plaintiff testified that she still has periodic episodes of extreme pain in spite of the fact that her present job is not as physically strenuous. Graham testified that upon his original examination he found severe trauma to the vertebrae which resulted in inflammation of the nerves in the cervical area. According to Graham, X-ray films taken about three months after the accident revealed a straightening of the cervical curve and increased dimensions of the cervical vertebrae along with subluxation and misalignment which created a wedging effect, causing inflammation of the nerves and the severe muscle spasms he found present. He testified that after his final examination of plaintiff, completed shortly before the trial, he concluded that the healing process had left scar tissue and that while the muscles now retain the cervical vertebrae in normal position, "over fatigue or stress" of the muscles will aggravate the underlying condition, producing pain consistent with plaintiff's complaints, and that the condition is permanent.

Although defendant's doctor testified that his lone examination revealed nothing but subjective complaints, the issue of whether plaintiff suffered a significant limitation of use of a body function or system should be left with the jury unless

there is no line of reasoning by which a jury could have reached that conclusion *(Licari v Elliott,* 57 NY2d 230, 239-240). In view of plaintiff's medical evidence indicating that plaintiff suffers a permanent disability from the effect of the presence of the scar tissue, and this court's recent recognition that pain may form the basis of a serious injury and that whether it does so is ordinarily a triable fact issue, the trial court did not err *(see, Butchino v Bush,* 109 AD2d 1001; *Hourigan v McGarry,* 106 AD2d 845, *appeal dismissed* 65 NY2d 637; *Kaiser v Edwards,* 98 AD2d 825). Inasmuch as there was a clear line of reasoning for the jury to conclude as it did, the trial court's denial of defendant's motion for a directed verdict was proper.

We have examined defendant's other arguments and find them unpersuasive.

Judgment affirmed, with costs. Main, Levine and Harvey, JJ., concur.

Kane, J. P., and Weiss, J., dissent and vote to reverse in a memorandum by Kane, J. P. Kane, J. P. (dissenting). In our opinion the trial court should have granted defendant's motion for a directed verdict due to plaintiff's failure to prove she sustained a serious injury as a result of the accident *(see,* Insurance Law § 5102 [d]). We would accordingly reverse.

As noted by the majority, the day after the accident plaintiff had pain in her neck, shoulder and left arm. She went to the CHP medical center in Albany County, where she was given a cervical collar and medication. Subsequently, she developed pain in her lower back, cramps in her right knee and headaches. On August 19, 1983, plaintiff went to see Dr. John Graham, a licensed chiropractor, who prescribed continuing treatment. These treatments continued until the day before trial, although plaintiff did not see Graham for the period between August 3, 1984 and November 1985. Plaintiff asserted that her symptoms occurred at least once a month, depending upon how hard she worked at home or at her job.

Plaintiff testified that she rested at home for eight days after the accident before returning to work as a waitress. She stated that she continued to work as a waitress until December 1984. Subsequently, she became a bartender because it was less strenuous.

The only witness plaintiff called to testify as to the nature and extent of her injuries was her chiropractor, Graham. At the time of his initial examination, Graham described plaintiff's injury as "a severe trauma to the neck, to the vertebrae

of the neck, resulting in an inflammation of the nerves which go down into the shoulders and trapezius muscles". Graham then interpreted two X rays *(see,* Education Law § 6554) taken of plaintiff on November 16, 1983. Graham stated that the first X ray showed a reversal of the curve in plaintiff's lower cervical spine due to muscle spasm in that area, which produced an "irritation or inflammation of the joints". The second X ray, according to Graham, showed an increase in the size of the vertebrae which indicates a rotation or misalignment which could produce muscle spasm, dull burning achiness and radiating pain. Graham's last examination of plaintiff (the day prior to trial) showed findings which were consistent with his earlier diagnosis, although he found no restrictions in her mobility. Graham opined that plaintiff's injuries, which he felt were caused by the auto accident in question, would "probably severely" affect plaintiff's ability to perform the duties of a waitress or bartender. However, Graham admitted that it was hard to determine how much of plaintiff's symptoms resulted from the injury or a hard day's work. Furthermore, he testified that full mobility existed on the day of his last examination prior to trial, although he stated the effects of the initial trauma could return when the muscles were placed under stress.

Defendant called Dr. Dominick Sette-Ducati, a neurologist, who testified that he ordered the X rays which Graham had previously interpreted, and had examined plaintiff twice. Sette-Ducati stated that his review of the X rays and his examinations of plaintiff revealed no evidence of injury. Rather, the examination and X rays were in all respects normal.

In determining whether plaintiff has suffered a significant limitation of use of a body function or system, the term "significant" requires something more than a minor limitation of use *(Licari v Elliott,* 57 NY2d 230; *Kordana v Pomellito,* 121 AD2d 783, *appeal dismissed* 68 NY2d 848). Generally, the subjective complaints of a plaintiff without medical foundation are insufficient to establish a prima facie case of serious injury within the meaning of the Insurance Law *(see, Licari v Elliott, supra).*

In the present case, plaintiff claims she is limited in terms of the duties she can perform as a waitress and bartender, as well as at home. Nonetheless, she has been continually employed after the accident. Moreover, she did not make appointments for treatment with Graham for over a year and only resumed them shortly before trial.

While Graham testified the X rays showed a reverse curve of the spine and a rotation or misalignment of the vertebrae, these X rays were taken approximately three months after the accident. No other evidence was produced which would indicate that in the two years between the date these X rays were taken and the date of trial (Jan. 9, 1986), plaintiff had a significant limitation of a body function or system. As noted above, Graham stated that his final examination of plaintiff revealed no restriction in mobility. Furthermore, Graham could not determine what part of plaintiff's symptoms resulted from the accident or a hard day's work. Moreover, all neurological exams were normal.

While plaintiff has suffered discomfort as a result of the accident, this discomfort in our opinion is not a serious injury within the meaning of Insurance Law § 5102 (d) (see, Licari v Elliott, supra; Kordana v Pomellito, supra). We would therefore reverse and dismiss the complaint.