LORETTA GADDY, Appellant, v GEOFFREY S. EYLER, Respondent.

Third Department, May 30, 1991

APPEARANCES OF COUNSEL

*James M. Woolsey, Jr., P. C.,* for appellant.

*Maynard, O'Connor & Smith (Ignacio A. Pardo* of counsel), for respondent.

## OPINION OF THE COURT

WEISS, J.

■ In this action to recover damages for personal injuries sustained on June 17, 1987 when plaintiff's vehicle was struck from behind, defendant has successfully moved for summary judgment based upon the absence of any "serious injury". Supreme Court, relying principally on this court's decision in *Pasqualino v Murphy* (149 AD2d 779), held that plaintiff's chronic cervical and lumbosacral sprain and strain, which her physicians state have resulted in decreased range of motion of the cervical and lumbar spine, even if credited as true "simply do not rise to the level of a serious injury as defined in the No-Fault Insurance Law". We affirm.

The primary purpose of the Comprehensive Motor Vehicle Insurance Reparations Act was to afford rapid payment of benefits without regard to fault and without the necessity of claimants having to resort to the courts. Insurance Law § 5104

(a) precludes any "right of recovery for non-economic loss, *except in the case of a serious injury*" (emphasis supplied). Serious injury is defined in pertinent part as follows: " 'Serious injury' means a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system" (Insurance Law § 5102 [d]).

Plaintiff has asserted in her bill of particulars that: "she sustained a serious injury by having sustained a permanent loss of use of a bodily member, system, function or organ; by having sustained significant impairment of a bodily system, function, member or organ; by having sustained permanent consequential limitation of a bodily system, function, member or organ, and by having been disabled for 90 out of 180 days immediately following the accident. In addition, plaintiff will claim she is permanently disabled from lifting, reaching, pushing and pulling." Defendant challenged the validity of these contentions by moving for summary judgment dismissing the complaint, relying principally upon the affidavit of Daniel Silverman, its examining physician, and the lack of credible, objective medical evidence to support plaintiff's claim of serious injury. Silverman examined plaintiff on April 3, 1990, some 10 months after plaintiff's last examination by her own physician. He found that plaintiff had a full range of motion of the neck and that her neurological examination was normal with no objective findings to corroborate a cervical radiculopathy or herniated disc.

Once defendant established a prima facie case that plaintiff's injuries were not serious, the burden shifted to her to come forward with proof in evidentiary form to demonstrate the contrary *(see, Fenstamacher v Reyell,* 152 AD2d 890, 892). To support her claim, plaintiff tendered an affidavit from Marvin Polansky, a physician who treated plaintiff from June 26, 1987 to February 13, 1988, and from Charles Kite, a neurosurgeon referred by Polansky. Polansky's opinion was that she had sustained a chronic cervical and lumbosacral sprain and strain, and that she also had signs of disc involvement. It was his opinion that, based upon plaintiff's complaints of pain, his examinations and the findings of Kite, plaintiff was permanently restricted from bending, heavy lifting, reaching and pulling.

In his affidavit, Kite averred that on his first examination of

plaintiff on September 7, 1988, he found "some limitation of motion of the cervical spine in rotation and flexion and the range of motion of the lumbar spine was moderately decreased without reversal of the lordotic curve on anterior flexion. Her straight leg raising was decreased to 80 bilaterally." He opined that "she had [a] sprain and strain of the cervical and lumbo-sacral spine and that she had a component of chronic disc disease producing her symptomatology". Kite next and last examined plaintiff nine months later on June 9, 1989. At that time "she complained of persistent episodes of intermittent neck and back pain with occasional numbness into her legs and pain radiating into her right shoulder". Based upon his examinations "and her history", Kite found "decreased range of motion of the cervical spine and of the lumbar spine without reversal of the lordotic curve and straight leg raising was still limited to 80". He opined that "she was permanently disabled from significant bending and heavy lifting" and "that the pain of which she complains * * * will also be a permanent fixture". Notably on this final examination, Kite failed to identify any injury which produced her pain. In her own affidavit, plaintiff avers that she is limited by her pain from performing many of the functions which were made part of her normal daily life and that her "lifestyle has changed substantially because of [her] limitations".

The issue was thus posited for Supreme Court to determine in the first instance whether this proof supports plaintiff's claim that she sustained a serious injury (see, e.g., Licari v Elliott, 57 NY2d 230, 237; Dwyer v Tracey, 105 AD2d 476). Initially, we find that based upon the findings of her own specialist (Kite), plaintiff failed to demonstrate a permanent consequential limitation of use of a body organ or member, or significant limitation of use of a body function or system (see, Insurance Law § 5102 [d]). Kite's description of the range of motion of her neck and back indicate, at best, minor limitation of use. Thus, plaintiff failed to demonstrate a prima facie case for "permanent consequential limitation of use" or "significant limitation of use" (see, Kordana v Pomellito, 121 AD2d 783, 784-785, appeal dismissed 68 NY2d 848).

Moreover, we find unpersuasive plaintiff's assertion that she sustained "serious injury" of a medically determined nature or impairment of a nonpermanent nature which endured for 90 days or more and substantially limited performance of her daily activities (Insurance Law § 5102 [d]). At best, her described curtailment was slight during 90 of the 180

days following the accident *(see, Licari v Elliott, supra,* at 236). Concededly, plaintiff returned to work as a stenographer after approximately a week. She does contend limitation of her ability to perform household activities, which are now performed by her daughter, and some limitation of her recreational activities. But neither are supported by a medically determined injury or impairment *(see, supra,* at 238; *De Filippo v White,* 101 AD2d 801, 803).

■ We turn then to plaintiff's third premise for support of her claim of serious injury, i.e., that she has sustained a permanent loss of use of a body organ, member, function or system because of the pain which she experiences from movement of her neck or back which she contends is aggravated by any bending or heavy lifting. Kite purports to verify this syndrome and opines that the pain will be permanent. At first blush, it would appear that plaintiff has established a prima facie case of serious injury supported by credible medical evidence *(see, Mooney v Ovitt,* 100 AD2d 702, 703; *Gleissner v LoPresti,* 135 AD2d 494). But we find that medical support to be lacking in substance. Kite found only minor limitations in plaintiff's range of motion and neither diagnoses a specific injury nor documents other symptoms, observations or medical evidence of an injury suggestive of continuing intermittent pain or a permanent loss of use. Therefore, we view this record as lacking credible medical evidence which identifies bodily injury producing intermittent pain of any degree.

It is now well settled that a medical opinion based upon subjective complaints of pain is insufficient to support a claim of serious injury *(Scheer v Koubek,* 70 NY2d 678). The decision in *Scheer v Koubek (supra)* must be read as implicitly overruling those earlier cases which held that subjective complaints of pain could support a finding of serious injury. While, indeed, this court has denied dismissal motions many times, our determinations have been based upon, at the very least, a modicum showing that a specific "serious injury" has been identified by a competent medical authority *(see, e.g., Schaming v Saunders Constr. Carriers,* — AD2d — [Apr. 11, 1991]; *Kernes v Pine Plains Cent. School,* — AD2d — [Apr. 11, 1991]; *Holbrook v Jamesway Corp.,* — AD2d — [Apr. 4, 1991]; *Ackerson v Mincey,* 162 AD2d 934; *Nasi v Giraudin,* 162 AD2d 805; *Collins v McGinley,* 158 AD2d 151; *Fenstamacher v Reyell,* 152 AD2d 890, *supra; Thomas v Drake,* 145 AD2d 687).

On the other hand, this court has rejected efforts by the plaintiffs in several recent cases to qualify their injuries as

"serious" *(see, e.g., Rivera v Pula,* — AD2d — [May 9, 1991]; *Henderson v Henderson,* — AD2d — [Apr. 11, 1991]; *Gray v Steger,* 150 AD2d 962; *Leschen v Kollarits,* 144 AD2d 122; *Gootz v Kelly,* 140 AD2d 874; *Armstrong v Wolfe,* 133 AD2d 957; *Kordana v Pomellito,* 121 AD2d 783, *supra).*

We all recognize that ofttimes even slight injuries produce pain, discomfort and limitation of motion. But pain and discomfort are symptoms, not specific injuries. Pain and discomfort, unsupported by credible medical evidence which diagnoses and identifies injuries, are alone insufficient to sustain a finding of serious injury *(Scheer v Koubek, supra).* "Significant" or "serious" requires something more than a minor limitation *(Licari v Elliott,* 57 NY2d 230, 236, *supra).* Unfortunately there is no bright-line rule which demarcates a "serious injury" and, more often than not, the task of differentiating "serious injury" becomes a metaphor for futility. But simply stated, subjective complaints and symptomatology without a diagnosis based upon a medical foundation are insufficient to establish a prima facie case of serious injury within the meaning of the Insurance Law *(Scheer v Koubek,* 126 AD2d 922, 925 [dissenting mem], *revd* 70 NY2d 678; *see, Licari v Elliott, supra).*

In conclusion, we find that plaintiff's medical evidence offered in opposition to defendant's summary judgment motion is insufficient to sustain her burden and we therefore affirm Supreme Court's order dismissing the complaint.

CREW III, J. (dissenting). This case presents yet another example of the difficulty in applying the dictates of *Licari v Elliott* (57 NY2d 230) and its progeny. Our disagreement with the majority stems not so much with the status of the law regarding "serious injury", but rather with the application of that law to the facts of this case. Plaintiff claims, *inter alia,* that she has sustained a "permanent loss of use of a body organ, member, function or system" (Insurance Law § 5102 [d]). "[P]ermanent loss of use" occurs when an "organ, member, function or system" (§ 5102 [d]) operates in some limited way or operates only with pain, and in order to sustain such a claim it must be supported by *competent medical evidence (see, Dwyer v Tracey,* 105 AD2d 476, 477). Additionally, that evidence must have as its basis some objective indicia *(Schaming v Saunders Constr. Carriers,* — AD2d — [Apr. 11, 1991]). Where the proffered medical evidence is based solely on the patient's subjective complaints, it is insufficient to establish

the "serious injury" threshold (see, Thomas v Drake, 145 AD2d 687).

In the case at bar, plaintiff asserts that she experiences pain in her neck and back on a daily basis which is aggravated by any bending or heavy lifting. She also is limited in the tasks that she can perform at home and work and states that when required to transfer files from one area to another, she must put them on a chair and roll them from place to place. In support of her assertions, plaintiff submitted the affidavit of her attending physician and a physician to whom she was later referred by her attending physician. Marvin Polansky, the physician who treated plaintiff from June 26, 1987 to February 13, 1988, opined that plaintiff sustained a chronic cervical and lumbosacral sprain and strain with signs of disc involvement which were caused by the automobile accident in question. He further opined that her injuries were of a permanent and disabling nature and that she is permanently restricted from bending, heavy lifting, reaching, pushing and pulling.

Charles Kite, to whom Polansky referred plaintiff, examined her on September 7, 1988 and June 9, 1989. On his first examination Kite found limitation of motion of the cervical and lumbar spine and a decrease in straight leg raising. He diagnosed plaintiff as having sustained a cervical and lumbosacral sprain with a component of disc disease from the June 17, 1987 accident. On the second examination Kite found a decreased range of motion of the cervical and lumbar spine and continued limitation of plaintiff's straight leg raising. As with Polansky, Kite was of the opinion that plaintiff was permanently disabled from significant bending and heavy lifting and that her condition would worsen with the passage of time.

We note, in passing, that the majority appears to put great weight on the fact that plaintiff has failed to support her claims with credible objective medical evidence. While this may be arguably true, it is not our function to pass upon the credibility of the affiants in support of plaintiff's claims. We have previously held that a court cannot determine the credibility of witnesses at this stage of the litigation (see, Cammarere v Villanova, 166 AD2d 760).

Based upon plaintiff's affidavit and those of her doctors, we perceive that plaintiff has established that her neck and back operate in a limited way and with pain, that the limitation is

permanent, is supported by competent medical evidence and is based upon the objective findings of Kite. Consequently, she has met the threshold requirement and is entitled to have the question resolved at trial. We would therefore reverse and deny defendant's motion for summary judgment.

MAHONEY, P. J., and HARVEY, J., concur with WEISS, J.; MIKOLL and CREW III, JJ., dissent and vote to reverse in an opinion by CREW III, J.

Order affirmed, without costs.