OPINION OF THE COURT
Albert E. Tait, Jr., J.
Defendant Jeff Caldarulo moves for summary judgment dismissing the complaint insofar as it seeks damages based on plaintiff Robyn L. Christopher’s injuries. Defendant Pasquale Caldarulo cross-moves for the same relief.
In the underlying action plaintiffs seek damages for personal injuries sustained when a boat trailer owned by defendant Jeff Caldarulo rolled into a tent in which plaintiffs were sleeping. Plaintiffs seek damages for their respective personal injuries (first and second causes of action) and for their respective losses of services of the other (third and fourth causes of action).
The following facts are undisputed. On September 8, 1991, the parties were staying at the campgrounds of DeWolf State Park on Wellesley Island, Orleans, New York. Defendants had a Dodge Caravan automobile which was owned by defendant Pasquale Caldarulo, to which was attached a boat trailer owned by defendant Jeff Caldarulo. At approximately 5:00 a.m. defendant Pasquale Caldarulo attempted to unhitch the trailer from the automobile. He unhooked the lights and safety chains. When he started jacking up the trailer he noticed that the van was going up with the trailer. So he cranked it down and tried again to jack up the trailer. Suddenly the van dropped and the trailer started to roll backward. The trailer rolled down the road and into the tent in which plaintiffs were sleeping.
Defendants move for summary judgment with respect to *362 plaintiff Robyn Christopher on the ground that she has not sustained a "serious injury” as defined by Insurance Law § 5102 (d).
Plaintiffs contend that Insurance Law § 5102 is inapplicable and Robyn Christopher does not need to meet the "serious injury” threshold because her injuries did not arise out of the use or operation of a motor vehicle.
The definition of motor vehicle includes a trailer (Vehicle and Trafile Law § 311 [2]) which is defined as ”[a]ny vehicle not propelled by its own power drawn on the public highways by a motor vehicle” (Vehicle and Traffic Law § 156). Plaintiffs contend than a trailer is a motor vehicle within the meaning of the statute only while it is attached to a motorized vehicle and only when it is being "drawn on the public highways.” They argue that inasmuch as defendants’ automobile was parked and not "being operated” on a highway and inasmuch as the trailer became detached from the automobile it no longer maintained the character of "motor vehicle”. Therefore they conclude that their injuries from the runaway trailer did not arise out of the use or operation of a motor vehicle.
It is true that not every injury occurring in or near a motor vehicle is covered by the phrase "use or operation”. The accident must be connected with the use of the automobile qua automobile (United Servs. Auto. Assn. v Aetna Cas. & Sur. Co., 75 AD2d 1022). In the instant case the trailer was drawn to the site by an automobile. The trailer would not have been present and in a position to roll out of defendants’ control if not for its attachment to the automobile. It clearly fell within the definition of motor vehicle. While in the process of detaching the trailer the van suddenly dropped causing the trailer to accidentally roll out of control. The trailer did not lose its identity as a motor vehicle by that sudden and accidental detachment from the automobile.
The cases cited by plaintiffs are factually very different from the case at bar. In Reisinger v Allstate Ins. Co. (58 AD2d 1028, affd 44 NY2d 881), plaintiff was injured by the explosion of a gas cook stove in a motor home. The Court determined that the stove was "equipment built into the vehicle to serve some other function” other than use of the vehicle as a motor vehicle (at 1028).
In the case of McConnell v Fireman’s Fund Am. Ins. Co. (49 AD2d 676), plaintiff was injured when her snowmobile collided with a parked, locked and unoccupied motor vehicle. *363 The vehicle’s use or operation played no part in the occurrence. In contrast, in the instant case the trailer was a motor vehicle within the meaning of the statute and plaintiffs’ injuries were directly caused by that trailer running over their tent. Plaintiffs’ injuries were caused by the use or operation of a motor vehicle. Accordingly, they must meet the serious injury threshold (Insurance Law art 51).
Insurance Law § 5102 (d) defines "serious injury”: "(d) 'Serious injury’ means a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person’s usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.”
Plaintiff Robyn Christopher alleges injuries pursuant to the past two clauses, i.e., significant limitation of use of a body function or system and an injury preventing performance of substantially all of her daily activities for 90 out of 180 days immediately following the accident.
On the day of the accident Robyn Christopher was taken to the emergency room of the hospital where she complained of a stiff neck. X-rays showed no abnormalities. She was diagnosed as having a cervical sprain. She was given muscle relaxants and a soft cervical collar and was released on that same day. She returned to work on September 12, 1991 on a part-time basis (four hours per day) and by mid-October 1991 she was working six hours per day.
Defendants have submitted the report of Robyn Christopher’s treating physician Dr. Richard Lockwood dated December 9, 1991. He saw her on September 16, 1991, September 24, 1991, and October 23, 1991. On September 16, 1991, she complained of pain, tenderness and stiffness in her neck and upper shoulders. Dr. Lockwood prescribed anti-inflammatory medication, warm compresses and physical therapy. On October 23, 1991, Dr. Lockwood reevaluated plaintiff and found her to be "85% improved” with continued pain and stiffness when tired. Physical therapy was discontinued. He stated that she *364 was 25 to 50% disabled for the first month after the accident and was 10 to 15% disabled as of the date of his December 9, 1991 report. He expected full recovery within three to six months after the accident.
Defendants also submitted the report of Dr. Joseph Conrad who examined Robyn Christopher on July 23, 1993. She complained of intermittent stiffness of the neck, usually accompanied by soreness, which is brought on by sitting at a computer for an hour or riding in a car or sitting in a movie for a long time. These symptoms were partially relieved by changing position, using a neck pillow and taking ibuprofen. Dr. Conrad found no objective residuals. With respect to range of motion of the cervical spine he noted that she "minimally restricts forward flexion and right and left lateral bending.” He found normal asymptomatic range of motion of both shoulders. It was his opinion that plaintiff’s cervical sprain was "resolved” and her bilateral strain of the trapezius muscles was "resolving”.
Defendants have submitted proof in admissible form which established prima facie that plaintiff Robyn Christopher did not suffer a "serious injury” within the meaning of Insurance Law § 5102 (d). The burden then shifts to plaintiffs to demonstrate the existence of a triable issue of fact (McHaffie v Antieri, 190 AD2d 780).
To that end plaintiffs have submitted the affidavit of Robyn Christopher and two from Dr. Lockwood. Robyn Christopher affirms that she returned to work four days after the accident, but had to leave a meeting after 30 minutes because of neck pain and a headache. For the first three weeks following the accident she worked only an average of four hours per day and missed two full days of work. By mid-October she was able to work an average of six hours per day. She states that "[djuring the first three months following the accident, my ability to fulfill a majority of my work commitments was significantly diminished.” She suffered "a great deal of pain” and her ability to move her neck was "greatly hindered.” She claims that during the six-month period following the accident her ability to perform some of her job responsibilities was "considerably impaired by my loss of range of motion in my neck and by pain.” She was completely unable to work at a computer for two weeks following the accident and for four months thereafter could only do so for short periods before pain and stiffness would require a break. She states that she was unable to lift heavy merchandise until March 1992. She *365 also claims curtailment of her responsibilities as cheerleading coach. Specifically, she states that she had to cancel "many” team practices and "numerous” team appearances because of her inability to drive or ride for longer than an hour. She gives no specific numbers or dates. She states that she still experiences "sporadic bouts of pain” when working at a computer for long periods of time, and when reading, sewing, attending movies, and driving or riding in an automobile for more than two hours.
Dr. Lockwood’s affidavit dated December 1, 1993 essentially reiterates his report of December 9, 1991. He states that on his initial examination of Robyn Christopher on September 16, 1991, he observed tenderness on both sides of her neck with range of motion limited to 30 degrees. He estimated 25 to 50% loss of use for one month. By October 23, 1991, he stated that she still had limited range of motion, although he does not state to what degree. At that time he found she had 85% use of her neck. He last saw her on December 18, 1991, at which time she had 90 to 95% use of her neck and he expected full recovery within another three months. Plaintiffs submitted a supplemental affidavit from Dr. Lockwood dated January 4, 1994, in which he states that he saw Robyn Christopher again on December 16, 1993. This brief affidavit offers nothing in the nature of medical findings; he repeats her symptoms as related by her and concludes that she has "permanent trapezius muscle pain” resulting in 5 to 10% disability at work. His office notes for that day do not indicate that any examination or objective medical tests were administered.
One of the obvious goals of the Legislature’s scheme of no-fault automobile reparation was to keep minor personal injury cases out of court (Licari v Elliott, 57 NY2d 230, 236). The issue is one for the court in the first instance to determine whether plaintiff has established a prima facie case of serious injury (Licari v Elliott, supra). Plaintiff Robyn Christopher has failed to meet that burden.
With respect to the claim of "significant limitation of use of a body function or system” the courts have held that the word "significant” must be construed as something more than a minor limitation. A minor, mild or slight limitation should be considered insignificant within the meaning of the statute (Licari v Elliott, supra). It has been determined that subjective complaints of transitory pain do not fall within the objective verbal definition of serious injury as set forth in the No-Fault
*366 Insurance Law (Scheer v Koubek, 70 NY2d 678; Delfino v Davey, 159 AD2d 604). The only limitation of use of any body system or function alluded to by plaintiff Robyn Christopher is the limited range of motion of her neck. The only objective medical evidence of such limitation was noted at 30 degrees by Dr. Lockwood on the initial examination on September 16, 1991. As of the October 23, 1991 examination he states that she still had limited range of motion with no indication as to the degree of that limitation other than his estimate that she had 85% use of her neck. By December 18, 1991, she had 90 to 95% use. Even if some restriction of motion of 5 to 10% were established there is no proof that it constituted a significant limitation of use of a body organ or member. Such minor limitation of movement is not "significant” within the meaning of the statute and constitutes at best minor limitation of use (Waldman v Chang, 175 AD2d 204; Gaddy v Eyler, 167 AD2d 67, affd 79 NY2d 955). Moreover there is no medical evidence that that limitation of range of motion continued beyond the first few months following the accident. Dr. Lockwood’s only subsequent report refers only to Ms. Christopher’s subject complaints of pain. He makes no. mention of any objective findings upon which he based his conclusion that she is 5 to 10% disabled at work. "Conclusions, even of an examining doctor, which are unsupported by acceptable objective proof are insufficient to defeat a summary judgment motion directed to the threshold issue of whether the plaintiff * * * has suffered serious physical injury” (Georgia v Ramautar, 180 AD2d 713, 714; Gaddy v Eyler, supra).
Construed in the light most favorable to plaintiffs Robyn Christopher’s established limitations were restricted range of motion for the first few weeks or months postaccident, which by December 1991, was a 5 to 10% limitation. As of the date of motion her only established limitation is again 5 to 10% disability at work and is based solely on "permanent trapezius muscle pain”. Pain unaccompanied by restriction in mobility is not a "serious injury” pursuant to Insurance Law § 5102 (Scheer v Koubek, supra). Transitory pain even when accompanied by allegations of limitation of movement of the neck is not sufficient to meet the "serious injury” threshold without any evidence of the extent of the limitation (Licari v Elliott, supra).
Pain may be the basis for a claim of serious injury where supported by evidence of an objective and medically determined injury (Cowley v Crocker, 186 AD2d 939). In Cowley plaintiff’s complaints of pain were supported by medical testi *367 mony of a specific loss of range of motion of a permanent nature.
The case of Forte v Vaccaro (175 AD2d 153) is factually very similar to the one at bar. Summary judgment was granted dismissing the complaint where plaintiff alleged neck and back sprain resulting in pain and some residual functional limitations and restriction of motion. X-rays of plaintiff were all negative and plaintiff missed only two days of work. The Court noted (at 153) the absence of evidence of objective measurement of the purported limitations and stated that the "mere repetition of the word 'permanent’ in the affidavits of a plaintiff or a treating physician does not suffice to establish serious injury.” Summary judgment is required where the evidence is limited to "conclusory assertions tailored to meet statutory requirements.” (Supra.)
Nor has plaintiff established a medically determined injury or impairment of a nonpermanent nature which prevents her from performing substantially all of the material acts which constitute her usual and customary daily activities for at least 90 out of 180 days immediately following the accident. As noted, plaintiff was unable to work for two days and was limited to half days for one month. Thereafter plaintiff was able to maintain her daily routine for most of each day. Her affidavit in opposition claims that her ability to perform some of her work responsibilities was "significantly diminished”. That does not meet the statutory standard of inability to perform substantially all usual daily activities. The words "substantially all” must be construed to mean that plaintiff has been curtailed from performing her usual activities to a great extent rather than some slight curtailment (Licari v Elliott, supra). Plaintiff has offered no proof of her usual daily activities nor, consequently, that she was curtailed from performing those activities to a great extent for at least 90 days (see, Horowitz v Clearwater, 176 AD2d 1083). The fact that she cannot perform a few enumerated tasks for lengthy periods without pain does not constitute curtailment from performing substantially all of her usual activities to a great extent (Licari v Elliott, supra; Crane v Richard, 180 AD2d 706).
The motion of defendant Jeff Caldarulo and the cross motion of defendant Pasquale Caldarulo for summary judgment dismissing the causes of action based on injuries to plaintiff Robyn L. Christopher are granted. Plaintiffs’ second and third causes of action are hereby dismissed.