**Flora WILLIAMS, Plaintiff,**

v.

**Noel RITCHIE, Delores Williams and Dhasrat Mangra, Defendants.**

**No. 00 CV 127(ILG).**

United States District Court, E.D. New York.

April 18, 2001.

Tracie A. Sundack, Tracie A. Sundack, L.L.C., White Plains, NY, Manjit C. Misra, Chawla, Misra & Shields, Jackson Heights, NY, for plaintiff.

Katherine A. McDonough, Kelly Rode & Kelly, LLP, Mineola, NY, Amelia Dweck, Cheven, Keely & Hatzis, New York City, for defendants.

## Memorandum & Order

GLASSER, District Judge.

This action arises from a collision that occurred on January 24, 1999 on an exit ramp of the Van Wyck Expressway while plaintiff Flora Williams rode in a car belonging to Noel Ritchie and driven by her daughter, Delores Williams. Defendant Dhasrat Mangra now seeks summary judgment against plaintiff on the ground that plaintiff has not sustained a "serious injury" as required by Article 51, § 5102(d) of the New York State Insurance Law. Also before the court is a motion for summary judgment by defendants Noel Ritchie and Delores Williams as against plaintiff on the ground that she has not sustained a "serious injury" and as against co-defendant Dhasrat Mangra on the issue of liability.[1] For the following reasons, defendant Mangra's motion for summary judgment should be granted, and plaintiff's action should be dismissed for failure to establish a "serious injury" under New York Insurance Law.

## Background

On January 24, 1999, plaintiff Flora Williams, a resident of South Carolina, was a passenger in a vehicle driven by defendant Delores Williams and owned by defendant Noel Ritchie, both New York residents. Also traveling as passengers in the vehicle were Delores Williams' son and daughter and a co-worker's daughter. (Delores Williams Dep. 20) While driving southbound on the Van Wyck Expressway in Queens, the Williams' car was hit by another car driven by its owner, defendant Dhasrat Mangra, also a New York resident. Plaintiff filed the Complaint in this action on January 6, 2000, although it was signed on October 8, 1999. In it, she alleges that she "was severely injured, bruised and wounded, suffered, still suffers and will continue to suffer for some time physical pain and bodily injury and became sick, sore, lame and disabled and so remained for a considerable length of time." (Comp.¶ 10) These injuries, she alleges, constitute "serious injuries" as defined under New York law. (*Id.* at ¶ 11) In her Response to Interrogatories, plaintiff elaborates that her injuries include: disc herniation in the cervical and lumbar spine, radiculitis, traumatic arthritis, a cerebral concussion, myositis and possible osteoarthritis and osteoporosis, anxiety, sleep disorders, loss of strength, tension, post traumatic stress disorder and emotional distress. (Abneri Decl. Ex. C, Pl.'s

1. As of March 14, 2001, plaintiff and defendant Mangra apparently had agreed to discontinue the action and cross-claim against defendants Noel Ritchie and Delores Williams, which would render their motion moot. However, to the extent that defendant Mangra relies on the motion submitted by Noel Ritchie and Delores Williams on the issue of serious injury, that motion is considered herein for that limited purpose. While a stipulation of discontinuance of the claim and cross-claim against Noel Ritchie and Delores Williams has not yet been filed as of the date of this Memorandum & Order, their counsel indicates that one is forthcoming and their motion for summary judgment therefore is not decided here. In the event Noel Ritchie and Delores Williams are not discontinued from this action, their motion for summary

Response to Interrog. No. 4(a)) Plaintiff further alleges that "she has not fully recovered from her injuries and upon information and belief, will not fully recover from her injuries." (*Id.* at 4(c))

## Discussion

New York substantive law governs this diversity action pursuant to well-settled principles governing the choice of law in diversity actions. *Lee v. Bankers Trust Co.,* 166 F.3d 540, 545 (2d Cir.1999). New York's no-fault statute for automobile accidents bars recovery for any action by or on behalf of a "covered person" against another covered person for personal injuries arising out of negligence in the use or operation of a motor vehicle in this state for economic loss. A right of recovery for non-economic loss does exist, however, "in the case of serious injury." *Morrone v. McJunkin,* No. 98 CV 2163, 1998 WL 872419, at *1, 1998 U.S. Dist. Lexis 19506, at *4 (S.D.N.Y.1998); N.Y.Ins.Law § 5104(a) (McKinney 1998). Nine categories of injuries may constitute a "serious injury" under the statute:

> "Serious injury" means a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of body function or system or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

N.Y.Ins.Law § 5102(d) (McKinney 1998). To demonstrate that her injuries are "serious injuries" entitling her to recovery under the no-fault statute, plaintiff must demonstrate that her injuries fall into one of the nine statutory categories.

Summary judgment against a plaintiff who seeks recovery under New York Insurance Law is appropriate when the evidence would not warrant a jury finding that the injury falls within one of the nine statutory categories. *Licari v. Elliott,* 57 N.Y.2d 230, 455 N.Y.S.2d 570, 573–74, 441 N.E.2d 1088 (1982). Thus, once a defendant establishes a *prima facie* case that plaintiff's injuries are not serious, the burden shifts to plaintiff to demonstrate that she has endured a serious injury. *Morrone,* 1998 WL 872419 at *2, 1998 U.S. Dist. Lexis 19506 at 5–6 (citing *Gaddy v. Eyler,* 79 N.Y.2d 955, 582 N.Y.S.2d 990, 991, 591 N.E.2d 1176 (1992)). A plaintiff may defeat summary judgment through admissible evidence in the form of sworn affidavits by physicians. *Morrone,* 1998 WL 872419 at *2, 1998 U.S. Dist. Lexis 19506 at *5–6 (citing *Bonsu v. Metropolitan Suburban Bus Authority,* 202 A.D.2d 538, 610 N.Y.S.2d 813, 813–14 (2d Dep't 1994); *McLoyrd v. Pennypacker,* 178 A.D.2d 227, 577 N.Y.S.2d 272, 273 (1st Dep't 1991), *appeal denied,* 79 N.Y.2d 754, 581 N.Y.S.2d 665, 590 N.E.2d 250 (1992)). Defendants' summary judgment motion may be premised on unsworn reports by plaintiff's physicians, but defendants must provide evidence from their own physicians in the form of sworn affidavits. *See, e.g., McGovern v. Walls,* 201 A.D.2d 628, 607 N.Y.S.2d 964 (2d Dep't 1994); *Looney v. Epervary,* 194 A.D.2d 591, 599 N.Y.S.2d 989, 989–90 (2d Dep't 1993).

Neither plaintiff nor defendants dispute the applicability of New York's no-fault

judgment on the issue of serious injury would be granted for the same reasons stated here.

statute. Plaintiff therefore is barred from recovering for non-economic loss unless she can show that her injuries fall within one of the nine categories of serious injury enumerated in § 5102(d). Plaintiff limits her claim to the last three categories of § 5102(d), which require: a showing of "permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment." N.Y.Ins. § 5102(d) (2001).

Defendants have certainly met their burden of proving a *prima facie* case that plaintiff's injuries are not serious. Defendants Delores Williams and Ritchie have submitted sworn reports, which may fairly be characterized as sworn affidavits, by Joseph L. Paul, M.D., an orthopedic surgeon, and Robert S. April, M.D., a neurologist, both of whom conclude, based upon their examinations of plaintiff, that she has no disability or injury as a result of the car accident. (Abneri Decl., Ex. G, Paul Rep.; Ex. H, April Rep.) In his motion for summary judgment, defendant Mangra "repeats, reiterates and relies" upon those arguments set forth in the submissions of Delores Williams and Ritchie, and to that extent, the reports of Drs. Paul and April also satisfy Mangra's initial burden on a motion for summary judgment.

Dr. Paul examined plaintiff on August 21, 2000, during which time he performed an orthopedic examination consisting of a general physical examination and an examination of plaintiff's lumbar spine, right shoulder and right hip. Dr. Paul noted that plaintiff complained of "headaches," "intermittent pain in her right shoulder and continued pain in her lower back and right hip, all of which are now almost one year and seven months post accident." (Abneri Decl., Ex. G, Paul Rep., 2) Relying on his examination and the medical records and history provided by plaintiff, Dr. Paul offered the following conclusions:

> [I]t is my opinion, with a reasonable degree of medical certainty, that Ms. Flora Williams has recovered from the injuries to her lumbar spine, right shoulder and right hip. Ms. Williams' examination today was completely normal, and despite her subjective complaints, there were no objective findings found during my examination.
>
> Today's examination was completely normal, and certainly, a permanent injury has not been sustained.
>
> Based upon my examination at this time, review of the MRI of the cervical and lumbar spine, x-rays of the chest, right shoulder and right hip, spinal ultrasound and the history as related by the claimant, there is no causally related disability or residuals as a result of the injuries to her lower back, right shoulder and right hip and the accident of 1/24/99.

(*Id.* at 4)

Dr. April also examined plaintiff on August 21, 2000, during which time he performed a neurological examination consisting of a cranial examination, a motor examination, mechanical testing and a sensory examination. Dr. April noted that plaintiff complained of "pain in the neck, head, right shoulder, left back and low midline back" that is "continuous." (Abneri Decl. Ex. H, April Rep., 1) At the conclusion of his examination, Dr. April's impressions were:

> There were no objective neurological findings and based on all evidence at hand, it was concluded, with reasonable medical certainty, that the accident of

record produced no permanent neurological residua, disability or limitation. Her present symptoms are not related to any neurological consequences of this incident.

. . .

There is no causally related neurological disability from this accident.

(Abneri Decl., April Rep., Ex. H)

In the face of this showing, plaintiff contends that she has met her burden and can defeat summary judgment. She has submitted a sworn report by John Gavini, M.D., her treating physician at North Bronx Medical, as well as portions from her deposition in which she describes the limitations she has endured as a result of the accident. (Pollack Aff. in Opp'n to Summ. J., Gavini Report, Ex. A and Flora Williams' Dep., Ex. B) Dr. Gavini's report indicates that plaintiff initially presented to his office on January 28, 1999, four days after her accident, with limited range of motion in the cervical and lumbar regions of her spine.[2] Dr. Gavini's preliminary diagnosis was "post-concussion syndrome; traumatic vertebrogenic encephalgia; cervical nerve compression syndrome; lumbar nerve compression syndrome; traumatic cervical paraspinal myofascitis with discgenic radiculopathy and intersegmental dysarthia; contusion of the anterior chest wall and thorax; traumatic lumbar paraspinal myofascitis with discgenic radiculopathy and extension sciatic neuropathy; internal derangement of right shoulder and right hip; post traumatic anxiety; [and] nervousness reactive to pain and stress." (Id. at 2) Based on this diagnosis, Dr. Gavini recommended a course of physical therapy and chiropractic treatment. Plaintiff was seen for follow-up examinations approximately every 4 weeks. An "MRI" of the cervical spine on February 4, 1999 revealed "focal disc herniation at the C3–C4 level" and "straightening of the normal cervical curvature due to muscular spasm." (Id. at 3) An "MRI" of the lumbosacral spine revealed "focal disc herniations . . . at the L4–L5 and L5–S1 levels." (Id.) "An electromyography study ('NCV/EMG') on February 24, 1999 revealed right C6 nerve root irritation of cervical spine consistent with cervical radiculopathy" but "no evidence of a generalized neuropathy." (Id.) Another "NCV/EMG" on March 31, 1999 revealed "no abnormality." (Id.) On June 11, 1999, a "SSEP" revealed "normal posterior tibial

---

2. Dr. Gavini compared (i) normal range of motion values with plaintiff's range of motion during (ii) an initial examination conducted on January 28, 1999 and (iii) a "final" examination apparently conducted on June 29, 1999. The comparison indicates the following limitations to her cervical spine:

| | Normal | Initial (1/28/99) | Final (6/29/99) |
|---|---|---|---|
| Flexion | 45 | 20 | 35 |
| Extension | 45 | 15 | 30 |
| Left rotation | 80 | 25 | 50 |
| Right rotation | 80 | 25 | 50 |
| Left lateral flexion | 40 | 10 | 20 |
| Right lateral flexion | 40 | 10 | 20 |

Moreover, the following limitations were noted to her lumbar spine:

| | Normal | Initial (1/28/99) | Final (6/29/99) |
|---|---|---|---|
| Flexion | 90 | 35 | 55 |
| Extension | 30 | 10 | 20 |
| Left rotation | 30 | 15 | 25 |
| Right rotation | 30 | 10 | 20 |
| Left lateral flexion | 30 | 05 | 20 |
| Right lateral flexion | 30 | 05 | 20 |

(Pollack Aff. in Opp'n, Gavini Rep., 2)

nerve SSEPs." (*Id.*) On March 23, 1999, a video fluoroscopy evaluation revealed "straightening of the normal cervical lordotic curvature ... compatible ;with soft tissue injury and/or spasm; ligamentous instability at the level of C3–4 due to ligamentous damage or laxity"; "damages to the capsual ligament of the C3–4 facet joint on the left side"; and "posterior subluxation of C3 on C4...." (*Id.*) A spinal and paraspinal ultrasound, for which no date is provided, revealed some "increased echogenicity" consistent with post-traumatic inflammation. Dr. Gavini's final diagnostic impression, apparently based on plaintiff's last visit to him on June 29, 1999, was that plaintiff had endured:

 posttraumatic encelphalgia;
 posttraumatic stress disorders;
 focal disc herniation at the C3–C4 level ...;
 straightening of the normal cervical curve due to muscular spasm ...;
 Right C6 nerve root irritation of cervical spine consistent with cervical radiculopathy [and] no evidence of generalized neuropathy;
 ligamentous instability at the level of C3–4 due to ligamentous damage or laxity; damage to the capsular ligament of the C3–4 facet joint on the left side; focal disc herniations noted posteriorly at the L4–5 and L5–S1 levels ...; [and,] right shoulder and right hip—contusion and sprain.

(*Id.* at 4) With respect to causality, Dr. Gavini noted: "[T]here is good reason to believe, with a reasonable degree of medical certainty, that the condition the patient has developed is solely related to and has a direct causal relationship to the accident on 1/24/99." (*Id.* at 5) His conclusions are as follows:

 Currently, the patient showed some degree of improvement. However, prolonged sitting and standing cause aching stiffness and acute pain with diffuse radiation. Because of the severity of the symptomatology, the patient is still limited in activities of daily living such as bending, picking up objects from the floor, lifting, pulling or pushing heavy objects. There is also difficulty and pain when sitting up from a lying down position and pain when sitting or standing for long periods of time. As a direct result of the traumatic injury, there were extremes of joint movement with concomitant stretching and tearing of the musculo-ligamentous structures of the cervical and lumbar spines. It appears that these areas are weakened for an indefinite period of time, resulting in a significant restricted mobility.

(*Id.* at 5) Finally, Dr. Gavini offers the following prognosis:

 As a direct result of the traumatic injuries sustained on 1/24/99, there were extremes of joint movements with concomitant stretching and tearing of the musculo-ligamentous structures of the Cervical, Thoracic, Lumbar spines[,] right shoulder and right hip as well as other affected body parts. Considering the patient's symptomatology, results of comparative tests, examination, and past experience with similar cases, that those weaknesses may well predispose those areas to further problems, which might not have otherwise bothered the patient prior to the accident. It is our considered opinion, that these areas will be permanently weakened for an indefinite period of time resulting in significant and permanent restricted mobility and functional limitations.

(*Id.* at 6)

### 1. Permanent Consequential Limitation

Under New York law, the permanency of an injury can be established by proof of "persistent pain, or operation of the organ, member or system in some

limited way, or only with pain." *Ottavio v. Moore,* 141 A.D.2d 806, 529 N.Y.S.2d 876 (2d Dep't 1988) (citing *Bassett v. Romano,* 126 A.D.2d 693, 511 N.Y.S.2d 298 (2d Dep't 1987)). "Although permanent pain, even of an intermittent character, may form the basis of a 'serious injury' ..., subjective complaints unsupported by credible medical evidence do not suffice." *Dwyer v. Tracey,* 105 A.D.2d 476, 480 N.Y.S.2d 781(citing *Jones v. Sharpe,* 99 A.D.2d 859, 472 N.Y.S.2d 779, aff'd. 63 N.Y.2d 645, 479 N.Y.S.2d 520, 468 N.E.2d 702; *Lopez v. Senatore,* 97 A.D.2d 787, 468 N.Y.S.2d 527 (2d Dep't 1983), appeal dismissed, 61 N.Y.2d 758; *Salisbury v. St. Louis,* 91 A.D.2d 745, 457 N.Y.S.2d 985). "The mere repetition of the word permanent' in the affidavits of a plaintiff or a treating physician does not suffice to establish serious injury within the meaning of Insurance Law § 5102(d)." *Adolphe v. Ramirez,* 173 A.D.2d 583, 570 N.Y.S.2d 167 (2d Dep't 1991).

■■■ Ordinarily, when physicians' reports reach opposite conclusions as to plaintiff's medical condition, "the discrepancies in the reports 'involve issues of credibility which are for a jury to determine.'" *Morsellino v. Frankel,* 161 A.D.2d 748, 556 N.Y.S.2d 103, 104 (2d Dep't 1990) (citing *Francis v. Basic Metal,* 144 A.D.2d 634, 635, 534 N.Y.S.2d 697). As the New York Court of Appeals stated in *Lopez v. Senatore,* 65 N.Y.2d 1017, 1020, 494 N.Y.S.2d 101, 102, 484 N.E.2d 130 (1985):

> Where the treating physician, in an affidavit supported by exhibits, has set forth the injuries and course of treatment, identified a limitation of movement of the neck of only 10 degrees to the right or left, and on that predicate expressed the opinion that there was a significant limitation of use of a described body function or system, such evidence was sufficient for the denial of

summary judgment to defendants. The medical reports and deposition testimony submitted by the defendants at best gave rise to questions of credibility, precluding summary judgment for plaintiff.

The reasons for following this general rule, however, are not as persuasive where the medical report submitted by plaintiff was prepared by an examining, rather than a treating physician. As this court has had occasion to observe once before, the affidavit of an examining physician may be considerably less reliable than that of a treating physician because the treating physician has a more intimate knowledge of the patient's maladies and therefore a better vantage point from which to draw scientific inferences and conclusions with respect to her medical status. *Filippini v. Beckworth,* 776 F.Supp. 673, 679–80 (E.D.N.Y.1991) ("A doctor who establishes a relationship with a patient over time—who diagnoses that patient's maladies and who prescribes and supervises a course of treatment—has a much greater familiarity with the patient's physical status than does a physician who examines the patient once or twice. The former simply has a richer source of data from which to draw scientific inferences and conclusions; thus, the report of a treating physician is inherently more reliable than that of an examining physician"). Plaintiff in this case has submitted a report by the physician who treated her for a period of approximately six months, which began almost immediately after the accident. That report is entitled to as much if not more credibility than the reports submitted by defendants, which were prepared by physicians who examined plaintiff for the first time almost 20 months after the accident and who never treated her.

■■■ Despite the added deference that might be accorded to Dr. Gavini's report because he is plaintiff's treating physician,

countervailing considerations—namely the unexplained temporal gap between Dr. Gavini's most recent examination of plaintiff and the preparation of his report—suggest that such deference would not be appropriate. Plaintiff's initial consultation with Dr. Gavini occurred a few days after the accident and was followed by a regular course of treatment that lasted approximately 5 months. However, Dr. Gavini's report is nonetheless medically stale in that he last examined plaintiff on June 29, 1999 but did not prepare the report until December 7, 2000, almost 18 months later. In contrast, Drs. April and Paul both examined plaintiff on August 21, 2000, more than a year after Dr. Gavini's last examination, and contemporaneously prepared their reports. In view of Dr. Gavini's own acknowledgment of the significant improvement to plaintiff's cervical and lumbar range of motion in the five month period between the initial examination in January 28, 1999 and the final examination on June 29, 1999, it is all the more likely that Dr. Gavini's report fails to capture plaintiff's current condition. The rather substantial temporal gap between Dr. Gavini's last examination of plaintiff and his preparation of the report give reason to doubt whether plaintiff's condition is accurately depicted in Dr. Gavini's report, especially in light of the contrary conclusions reached by defendants' physicians, Drs. Paul and April. When faced with contradictory reports, one of which is medically stale, courts have not hesitated to grant summary judgment on the basis of the more recent examination. *See Thompkins v. Santos,* No. 98 Civ. 4634, 1999 WL 1043966, at *5, 1999 U.S. Dist. LEXIS 17717, *14–15 (S.D.N.Y. Nov. 16, 1999) (affidavit based on a two-year-old medical examination to establish that plaintiff had permanent injuries alone was "too old to support [plaintiff's] claims of permanent injury in the face of defendants doctors' affidavits to the contrary, which are based on recent examinations" and which reported no permanent injuries.); see also Troutovski v. Sitnir, 180 Misc.2d 124, 126, 687 N.Y.S.2d 534, 535 (Kings County Civ.Ct. 1999) ("The ... rationale for requiring a recent medical examination, although not explicitly set forth by the Appellate Division, is patently obvious .... The absence of proof of a recent medical examination leaves an important evidentiary vacuum in a plaintiff's opposition to a motion for summary judgment, where the plaintiff is claiming some form of permanent or significant injury."); *Yamin v. Brougham Bus Transportation, Inc.,* 220 A.D.2d 739, 740, 633 N.Y.S.2d 78 (2d Dep't 1995) (affirmation prepared more than two years after medical expert had last treated the injured plaintiff, and which did not indicate that the opinion expressed was based upon a recent medical examination of plaintiff, was insufficient to raise triable issue under § 5102(d)); *Loiacano v. Lawrence,* 214 A.D.2d 704, 705, 625 N.Y.S.2d 606 (2d Dep't 1995) (affidavit of plaintiff's medical expert "deficient insofar as it failed to indicate that the opinion expressed therein was based upon a recent medical examination"); *Marshall v. Albano,* 182 A.D.2d 614, 582 N.Y.S.2d 220 (2d Dep't 1992) (summary judgment for defendant was appropriate where, despite attesting to a 10 percent restriction of range of motion in the neck, physician's affidavit did not provide any information concerning the nature of the plaintiffs medical treatment or any explanation for the 16–month–lag between plaintiff's initial medical treatment and his subsequent visit to the treating physician); *Philpotts v. Petrovic,* 160 A.D.2d 856, 857, 554 N.Y.S.2d 289 (2d Dep't 1990) (summary judgment for defendant was appropriate notwithstanding affidavit of the plaintiffs' former treating physician characterizing their injuries as "serious," but without explanation of the gap of more than two and a half years

since plaintiffs were last examined by physician); *Covington v. Cinnirella,* 146 A.D.2d 565, 566, 536 N.Y.S.2d 514 (2d Dep't 1989) (medical affidavit submitted on plaintiff's behalf in which physician expressly bases his opinion on an examination of his records, without indicating that he has recently examined the plaintiff, is insufficient to withstand summary judgment).

Here, because Dr. Gavini's last examination of plaintiff took place too long ago to capture any improvements to her condition, and because such improvements are clearly reflected in the reports of defendants' physicians, plaintiff's claim that she has endured a permanent consequential limitation to a body organ or system must fail. Plaintiff attests to continued intermittent pain curtailing certain activities, but the medical evidence in support of these contentions is absent. *See Dwyer,* 105 A.D.2d at 477, 480 N.Y.S.2d 781 (granting summary judgment where "the medical evidence in support of [plaintiff's] contentions is tenuous at best."). Dr. Gavini's diagnosis of a "significant and permanent restricted mobility and functional limitations" is obviously premised on plaintiffs subjective complaints and is starkly contradicted by more recent examinations of plaintiff, which reveal no objective medical evidence whatsoever of limitations. Dr. Gavini's prediction that plaintiff's injuries are permanent, as in *Dwyer,* "is essentially an exercise in speculation and does not rise to the level of credible medical evidence required to support plaintiff's claim of permanency ...." *Id.* Accordingly, plaintiff has failed to establish permanent injuries for purposes of § 5102(d).

## 2. Significant Limitation

A "minor, mild or slight limitation" of use is insignificant under § 5102 and does not meet the threshold requirement as a matter of law. *Licari v. Elliott,* 85 A.D.2d 596, 444 N.Y.S.2d 703, *aff'd* 57 N.Y.2d 230, 455 N.Y.S.2d 570, 441 N.E.2d 1088 (1982). Rather, a "significant limitation" requires proof of "more than a minor limitation of use." *Id.* To establish such a showing, a medical affidavit specifying "the degree of restriction of movement suffered" and "the objective tests performed to determine such restriction of movement" is generally satisfactory. *Merisca v. Alford,* 243 A.D.2d 613, 663 N.Y.S.2d 853, 854 (2d Dep't 1997): *see also Parker v. Defontaine–Stratton,* 231 A.D.2d 412, 647 N.Y.S.2d 189, 190 (1st Dep't 1996) ("[A] medical affidavit which demonstrates that the plaintiff's limitations have been objectively measured or quantified is sufficient."); *Nasrallah v. Helio De,* No. 96–CV–8727, 1998 WL 152568, at *7, 1998 U.S. Dist. LEXIS 4173, *22 (S.D.N.Y. April 2, 1998) ("The vast weight of the Appellate Division authority stands for the proposition" that a physician's affirmation as to the degree or extent of the limitation "is sufficient under New York law to establish a *prima facie* case of serious injury."). *But see Waldman v. Dong Kook Chang,* 175 A.D.2d 204, 572 N.Y.S.2d 79, 80 (2d Dep't 1991) ("Even assuming that a restriction of motion were demonstrated, the plaintiff failed to prove that it constituted a significant limitation of use of a body organ or member so as to meet the threshold requirement for maintaining this action."). Subjective complaints of pain are insufficient to establish a "significant limitation" unless accompanied by objective, medical evidence of the extent or degree of the limitation and its duration. *See, e.g., Beckett v. Conte,* 176 A.D.2d 774, 774, 575 N.Y.S.2d 102 (2d Dep't 1991) (granting, summary judgment for defendants despite plaintiff's contention that she continued to suffer pain and was unable to work due to injuries suffered in an accident where defendants' medical expert stated that "no evidence existed of any neurological dysfunction") (citing *Scheer v.*

*Koubek,* 70 N.Y.2d 678, 679, 518 N.Y.S.2d 788, 512 N.E.2d 309 (1987); *Phillips v. Costa,* 160 A.D.2d 855, 554 N.Y.S.2d 288 (2d Dep't 1990)); *Tipping–Cestari v. Kilhenny,* 174 A.D.2d 663, 571 N.Y.S.2d 525, 526 (2d Dep't 1991) (holding that subjective complaints of pain stemming from cervical and lumbar sprain "cannot suffice to establish serious injury under the statute"); *Traugott v. Konig,* 184 A.D.2d 765, 587 N.Y.S.2d 192, 192 (2d Dep't 1992) (finding insufficient plaintiff's "subjective experience of pain" for purposes of recovery under § 5102). Nor is a limitation of motion that has resolved sufficient to establish significant limitation. *Schultz v. Von Voight,* 216 A.D.2d 451, 628 N.Y.S.2d 388, 389 (2d Dep't 1995) (granting summary judgment to defendant because it presented evidence that plaintiff had recovered from alleged disc herniation).

Even if a plaintiff succeeds in establishing some permanent restriction of motion, that showing is insufficient if the restriction is only partial. *Christopher v. Caldarulo,* 160 Misc.2d 360, 366, 608 N.Y.S.2d 998 (Sup.Ct. Madison Co.1994) ("Even if some restriction of motion of 5 to 10% were established there is no proof that it constituted a significant limitation of use of a body organ or member. Such minor limitation of movement is not 'significant' within the meaning of the statute and constitutes at best minor limitation of use.") (citing *Waldman v. Chang,* 175 A.D.2d 204, 572 N.Y.S.2d 79 (2d Dep't 1991) (holding as a matter of law that plaintiff's 15% limitation in range of motion of cervical spine is not "significant" within the meaning of the statute); *Gaddy v. Eyler,* 167 A.D.2d 67, 570 N.Y.S.2d 853 (3d Dep't 1991), *aff'd* 79 N.Y.2d 955, 582 N.Y.S.2d 990, 591 N.E.2d 1176 (1992) (granting defendant's motion for summary judgment where plaintiff's minor limitation of movement in neck and back are insignificant within the meaning of the no-fault statute)). Moreover, a mere straightening

of the lordotic curve, persistent headaches or a strained shoulder muscle which does not disrupt overall functioning does not qualify as significant limitation of use of a body function or system. *Thrall v. Syracuse,* 60 N.Y.2d 950, 471 N.Y.S.2d 51, 459 N.E.2d 160 (1983) (citing with approval the dissenting opinion in 96 A.D.2d 715, 464 N.Y.S.2d 1022 (finding no "significant limitation of use of a body function or system" where plaintiff sustained bruised arm, muscle strain in left shoulder, and possible stretching of nerve tissues leading from neck to shoulder but subsequent examination revealed full range of motion)).

As indicated previously, plaintiff here complains of intermittent pain in her hip and lower back, and attempts to characterize her injury as a "significant limitation" on the use of a body function or system with the report of Dr. Gavini. While Dr. Gavini's report did document limitations in plaintiff's range of motion that might be characterized as "significant," *see Lopez,* 65 N.Y.2d at 1020, 494 N.Y.S.2d 101, 484 N.E.2d 130 (holding that a physician's affirmation that a 10% limitation in neck movement was significant precluded summary judgment for defendants); *Pichardo v. Chesley,* No. 92–CV–5422, 1994 WL 369281, at *2 (S.D.N.Y. July 12, 1994) (collecting cases and holding that evidence of a "5% restriction of flexion and extension of the neck, a 10% restriction of flexion and extension of lumbosacral spine, and a 10% restriction of flexion and extension of his right knee" raised "a triable issue of fact as to whether plaintiff suffered a significant limitation of use of a body function or system within the meaning of IL § 5102(d)"), that report is stale for the same reasons indicated earlier. Notably, the report submitted by Dr. Paul, which relies on a medical examination that was performed more than one year after Dr. Gavini's examination, suggests that all

of these limitations have disappeared. Dr. Paul's examination of plaintiffs lumbar spine, right shoulder and right hip reveals that the lordotic curve is normal and that her range of motion is precisely that which is to be expected in a normal examination. Accordingly, plaintiff cannot establish that she suffered a significant limitation of use of a body function or system.

### 3. Normal Life Activities for $^{90}/_{180}$ days following, accident

 Plaintiff next alleges that she sustained an injury that prevented her from performing substantially all of the material acts which constitute her usual and customary daily activities for a period in excess of 90 days in the 180 days following the injury. In order to defeat summary judgment, a plaintiff must support her assertion that her injury prevents her from working, with objective medical evidence. "Mere allegations of limitation of body functions without medical proof are insufficient to demonstrate the existence of a genuine factual issue." *Jones v. Sharpe*, 99 A.D.2d 859, 859, 472 N.Y.S.2d 779 (3d Dep't 1984) (citing *Daviero v. Johnson*, 88 A.D.2d 732, 733, 451 N.Y.S.2d 858 (3d Dep't 1982)). The 90 days set forth in the statute are strictly construed. *See, e.g. Abrahamson v. Premier Car Rental*, 261 A.D.2d 562, 562, 691 N.Y.S.2d 83 (2d Dep't 1999) (defendants sustained their burden of demonstrating that the plaintiff was not prevented from performing "substantially all" of his daily activities during 90 out of 180 days following the occurrence of the injury where evidence demonstrated that injured plaintiff returned to work full time within 73 days of the accident).

Prior to her accident, plaintiff here sold Avon products three to four times a week, carrying between 2 to 300 orders of Avon products each day she worked. (Pl.Dep.9) In addition, plaintiff cared for her mother, took walks with her neighbors and performed household chores and yard work.

(*Id.* at 7–3, 74, 78) Plaintiff now alleges that she was unable to perform these daily activities for 90 of the 180 days following the accident. However, plaintiff has failed to offer objective medical evidence to support that assertion. Dr. Gavini notes in his report that plaintiff reports that she is "still limited in activities of daily living such as bending, picking up objects from the floor, lifting, pulling or pushing heavy objects" and that she reports "difficulty and pain when sitting up from a lying down position and pain when sitting or standing for long, periods of time." (Pollack Aff. Ex. A, Gavini Rep. 5) However, Dr. Gavini does not indicate precisely when plaintiff was in fact prevented from engaging in such activities and his report therefore fails to establish that she was so prevented for the time period set forth in § 5102(d). Moreover, Dr. Gavini does not suggest that he or any other physician instructed plaintiff to remain confined at home or to refrain from returning to her work as an Avon representative.

Plaintiff herself has not submitted an affidavit detailing her alleged confinement in the months after the accident, and the sole evidence of this confinement comes from her deposition testimony. Even assuming for the purposes of argument that plaintiff's deposition testimony could fill the gaps left by Dr. Gavini's report, those deposition excerpts that have been filed with the court do not elucidate with any degree of clarity the reasons for plaintiff's failure to return to work or the precise period during which she was purportedly unable to engage in her usual life activities.

When asked about why she could not return to her job after the accident, plaintiff responded that it was because she could no longer carry heavy packages. (Pl.Dep.9) At the same time, however, plaintiff acknowledged that she might have

been able to return to work if she drove, but that because she did not drive, she would have been forced to carry packages around. (*Id.*) Plaintiff also admits that she was not confined to her home after the accident, but that she was well enough to move to South Carolina three and a half months after the accident (*id.* at 85), that she accompanied her husband to the supermarket on occasion (*id.*), and that she even traveled to the Bahamas "more than once," including a trip in April 2000. (*Id.* at 114) As with Dr. Gavini's report, however, plaintiff's deposition is bereft of evidence supporting her claim that she could not maintain her customary activities for the statutorily required period.

### Conclusion

For the foregoing reasons, defendant Mangra's motion for summary judgment should be granted, and plaintiff's action should be dismissed in its entirety.

SO ORDERED.