Jill L. **BRUSSO** and Wayne T. **Brusso**, Plaintiffs,

v.

Tracey L. **IMBEAULT** and **Keltic Transportation, Inc.,** Defendants.

No. 07–CV–6155P.

United States District Court, W.D. New York.

March 16, 2010.

Michele A. Braun, Thomas M. Mercure, Lipsitz, Green, Scime, Cambria, LLP, Buffalo, NY, for Plaintiffs.

Donna L. Burden, Burden, Gulisano & Hickey, LLC, Buffalo, NY, for Defendants.

## DECISION & ORDER

MARIAN W. PAYSON, United States Magistrate Judge.

### PRELIMINARY STATEMENT

Plaintiff Jill Brusso ("Brusso") has brought this action to recover for injuries sustained in an automobile accident. Her husband, Wayne Brusso, has also sued for loss of consortium. Plaintiffs originally filed the complaint in New York State Supreme Court. Defendants thereafter removed the action to federal court, invoking diversity of citizenship jurisdiction under 28 U.S.C. § 1441. (Docket # 1). In their amended answer, defendants have alleged a counterclaim against Wayne Brusso for contribution and indemnification. (Docket # 15 at ¶ 25). Pursuant to 28 U.S.C. § 636(c), the parties have consented to have a United States magistrate judge conduct all further proceedings in this case, including the entry of final judgment. (Docket # 51).

Currently pending are two motions for summary judgment filed by defendants. The first seeks judgment in their favor on

the grounds that Brusso has not raised a triable issue of fact that she sustained a "serious injury" under Section 5102 of the New York State Insurance Law. (Docket # 58). The second seeks judgment on the basis of a release that she signed approximately six months after the accident. (Docket # 68). Also pending before the Court is a cross-motion filed by Brusso to preclude consideration of records of her former treating chiropractor on the basis that defendants improperly gained access to those records. (Docket # 61).

For the reasons discussed below, plaintiffs' motion to preclude is denied and defendants' motion for summary judgment on the issue of "serious injury" is granted.

## FACTUAL BACKGROUND

On February 2, 2004, a tractor-trailer owned and operated by defendants collided with Brusso's vehicle on Commerce Drive in Dansville, New York. (Docket # 75 at ¶¶ 1–2). Following the accident, Brusso was taken to the emergency room at a nearby hospital and was treated for neck and back complaints. (*Id.* at ¶ 5). Brusso was evaluated by her primary care physician, Dr. Carol Holobinko, D.O. ("Holobinko") two days later on February 4, 2004. (Docket # 65 at ¶ 3). During that visit, Brusso complained of neck and back pain and was prescribed muscle relaxants and over-the-counter analgesics. (*Id.* at 3 and Exhibit ("Ex.") A). Brusso returned to work two days following the accident. (*Id.* at ¶ 7).

Brusso claims that she suffered the following physical injuries as a result of the accident:

disc bulge and/or herniations at C4–5; posterior radial tear at C4–5; posterior radial tear at C6–7; exacerbation and/or precipitation or disc protrusion and/or herniation at C6–7; cervical strain/sprain; exacerbation and/or precipitation of straightening of cervical curvature; muscle spasms; neck pain radiating down right arm into hand; lumbar strain/sprain; chronic low back pain with intermittent radiation into right leg/foot; intermittent paresthesia in right foot; bruised right side; pain in right rib area; secondary headaches; disrupted sleep pattern and sleep deprivation secondary to pain and discomfort; limited range of motion in cervical and lumbar spine areas; numbness and tingling in arms and legs; disc bulge and/or herniation and L1–2; exacerbation and/or precipitation of disc degeneration at T12–L1 and L1–2; weakness in arms and legs; right shoulder and arm pain; decreased grip strength in right hand; paresthesia in right hand/fingers; altogether with injuries to the bones, muscles, tendons, ligaments, nerves, blood vessels and soft tissues in the injured areas.

(Docket # 61 at ¶ 9; 54–7 at 14–15). She further claims that she experienced pain and suffering, emotional distress and the "limited ability to perform normal daily functions." (Docket # 54–7 at 15).

## I. History of Neck and Back Pain Prior to the February 2, 2004 Accident

Prior to the February 2, 2004 accident, Brusso treated with a chiropractor for nearly a decade. (*See* Docket # 54–17). Specifically, Brusso began treating with Dr. David Kartzman, D.C. ("Kartzman") on October 24, 1995 for complaints of pain between her shoulder blades and in her lower back. (*Id.* at 2). After she took a fall in early 1996, Brusso began to complain of neck pain. (*Id.* at 5). The neck and lower back pain continued through February 25, 1997, when Brusso reported to Kartzman that she had been involved a car accident in which her vehicle had skidded off an icy road. (*Id.* at 6–10). Thereafter, Brusso's complaints of neck and mid—and lower back pain increased and persisted through 1999. In early 1999 she

reported that she had fallen on ice. (*Id.* at 10–16).

On December 12, 2002, Brusso reported that she had been involved in another motor vehicle accident; this time, the accident caused her truck to be thrown into a ditch. (*Id.* at 21). Brusso's treatment with Kartzman between 2000 and 2003 was marked with fewer complaints of neck pain, but more complaints of lower back pain, prompting Dr. Kartzman to refer her for magnetic resonance imaging ("MRI") of her lumbar spine. (*Id.* at 17). On November 6, 2003, Brusso complained again of neck and lower back pain, and Dr. Kartzman noted a decrease in her "cervical right lateral flexion at cervical thoracic junction." (*Id.* at 25). Brusso's last visit with Kartzman was on November 11, 2003, less than three months before the accident at issue in this lawsuit. (*Id.* at 25–26). All told, Brusso treated with Kartzman on approximately forty-five occasions during the eight years that she was his patient. (Docket # 54–17).

Records of Brusso's treatment with her primary care physician, Dr. Holobinko, confirm that Brusso reported to a nurse practitioner, Sandra Kelsey ("Kelsey"), that she had been in a motor vehicle accident in late 2002 or early 2003. (Docket # 54–21). Specifically, on January 6, 2003, Brusso told Kelsey that she had been "involved in a skid off accident in the snow" and complained of right shoulder pain. (*Id.*). On December 9, 2003, Brusso returned to Holobinko's office complaining of increased right neck and shoulder pain and numbness in her right arm and hand, causing Kelsey to order an MRI of Brusso's cervical neck. (*Id.*). Two weeks later, Kelsey noted that the MRI of Brusso's "cervical spine show[ed] minimal posterior disk bulging at C6–7, no disk herniation, normal cervical cord." (*Id.*). Kelsey recommended that Brusso undergo physical therapy and continue to take muscle relax-

ants and anti-inflammatory medication. (*Id.*).

## II. *Brusso's Treatment Following the February 2, 2004 Accident*

Following the February 2, 2004 accident at issue in this case, Brusso treated with Dr. Holobinko for neck and back pain. (Docket # 65). As stated earlier, Brusso first saw Holobinko for evaluation two days following the accident. (*Id.*). At that time, Brusso complained of neck, back and rib pain, for which Holobinko prescribed Motrin, muscle relaxants and the use of cool compresses. (*Id.*). At her follow-up appointment two weeks later, on February 17, 2004, Brusso was referred for massage therapy, which Brusso continued on a weekly basis through October 2004. (*Id.*). Holobinko's records reflect that Brusso had full range of motion in her cervical neck by May 4, 2004. (*Id.*).

A police report provided by defendants indicates that Brusso was involved in another motor vehicle accident on May 10, 2004. (Docket # 54–28). No mention of the accident is noted in Holobinko's records and no evidence exists in the record that Brusso sought medical treatment for any injuries from that accident. (Docket # 65).

On August 12, 2004, Nurse Practitioner Kelsey noted the presence of a mild cervical muscle spasm and, in October 2004, Brusso began to complain of increased neck and lower back pain. (*Id.*). Another MRI of Brusso's cervical and lumbar spine was ordered, the results of which Holobinko described as "normal except some bulging discs." (*Id.*). The October 2004 MRI of Brusso's lumbar spine showed a "[m]ild disc bulge at the thoracolumbar spine without herniated nucleus pulposus nor spinal stenosis." (Docket # 54–24). The radiologist concluded that the 2004 MRI showed "no significant change" from the MRI conducted on July 12, 2000. (*Id.*).

The 2004 MRI of Brusso's cervical spine revealed a small C6–7 disc bulge and a mild curvature of the spine. (*Id.*). Similarly, the radiologist concluded that it showed no change from the earlier, pre-accident MRI conducted in 2003. (*Id.*).

In March 2005, Holobinko began to treat Brusso with acupuncture to address her continued pain. (*Id.*). Two months later, in May 2005, Holobinko referred her to physical therapy. (Docket # 65). Despite this treatment, Brusso continued to complain of neck and lower back pain at each monthly appointment with her physician's office. (*Id.*). At some point thereafter, Brusso also received a series of cortisone injections. (Docket # 61–2 at 100). In March 2006, Brusso began treatment with a chiropractor, Dr. Rick Czajkowski, D.C. ("Czajkowski"), and continued treating with him until at least September 2009. (Docket # 63).

Holobinko also referred Brusso to a neurosurgeon, Dr. Seth Zeidman, M.D. ("Zeidman"), on May 18, 2006. (Docket # 64). At Zeidman's recommendation, Brusso underwent a cervical discogram, which "revealed a central protrusion with radial tear and leaking at C6–7 as well as a small radial tear with central protrusion at C4–5." (*Id.* at ¶ 11). Zeidman recommended surgery for the tear consisting of a cervical dissectomy and fusion at C6–7. (*Id.* at ¶ 13). According to Brusso, problems concerning "payment" have prevented her from undergoing the recommended surgery. (Docket # 61–2 at 97; 65 at ¶ 12).

### III. Effect of Injuries on Brusso's Activities

Brusso testified at her deposition that her work as a bank teller aggravates the pain in her back and neck. (Docket # 61–2 at 101). She used to enjoy riding her bicycle and camping, but the pain from the accident now interferes with her enjoyment of those activities. (*Id.* at 101, 105–

07). She also testified that following the accident she continued to play sports with her children, such as tennis, but has not been able to do so for a "couple years." (*Id.* at 102–03). Brusso no longer vacuums nor carries laundry, although she operates the washer and dryer. (*Id.* at 103–04). Her husband and children now assist with household chores, such as vacuuming and cleaning the bathroom. (*Id.* at 104). According to her testimony, Brusso has trouble driving distances longer than twenty minutes in duration and rarely goes grocery shopping. (*Id.* at 108).

### IV. Release of Claims

On July 14, 2004, approximately six months after the accident, Brusso signed two releases in exchange for one check in the amount of $160, which reimbursed her for the two days of missed work, and a second check for $500 for property damage. (Docket # 91 at ¶¶ 6–7). The release accompanying the $160 check provides that Brusso "discharge[s]" defendants from:

> [a]ny and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expenses and compensation whatsoever ... on account of or in any way growing out of any and all known and unknown, foreseen and unforeseen bodily and personal injuries.... The undersigned hereby declares and represents that the injuries sustained are or may be permanent and progressive and that recovery therefrom is uncertain and indefinite.

(Docket # 91).

### DISCUSSION

### I. Cross–Motion to Preclude Kartzman's Records

As an initial matter, I address Brusso's cross-motion to preclude consideration of Dr. Kartzman's records in connection with the pending summary judg-

ment motion. (Docket # 61). Specifically, Brusso contends that Kartzman's records were obtained outside the discovery period and in violation of medical privacy laws. (Docket # 62 at 2–3).

As discussed above, Kartzman is a chiropractor with whom Brusso treated prior to the February 2, 2004 accident. On October 1, 2007, Brusso signed an authorization for release of Kartzman's records. (Docket # 61–5). The authorization was provided on a form approved by the New York State Department of Health as compliant with the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). (*Id.*). The authorization, which by its terms was effective for one year from its execution, provided that Brusso's medical records were to be released to defendants' counsel, but that counsel was not authorized to speak to Katzman about Brusso's "health information." (*Id.*). Defendants obtained Kartzman's records on November 17, 2007 and found that they were illegible. (Docket # 99 at ¶¶ 4, 7).

The deadline for fact discovery expired on March 16, 2009.[1] (Docket # 32). That same day, defendants subpoenaed Kartzman for a deposition so that he could assist in deciphering the content of his records. (Docket # 54 at ¶ 46). Brusso moved to quash the subpoena, then withdrew that motion after defense counsel agreed to withdraw the subpoena. (Docket # 46, 49, 61 at ¶ 17). Without advising plaintiffs' counsel, counsel for defendants then arranged for Kartzman to dictate the contents of the records by reading them aloud to a court reporter. (Docket # 54–17). That dictation and transcription occurred on June 4, 2009. (*Id.*). Neither defendants' counsel, nor any member of her firm, attended Kartzman's dictation session; nor have they discussed the content of Brusso's records with Kartzman. (Docket # 99, 100).

I find no basis on which to preclude consideration of Kartzman's records on this motion. Although the dictation of his records occurred outside the discovery period, the actual records were properly obtained well within the requisite time frame and during the period authorized by the release. Defendants understandably sought Kartzman's assistance in deciphering the illegible records, which were of no use without translation. Although counsel for defendants should have advised Brusso of her intent to arrange the dictation, Brusso has not identified any prejudice she has suffered as a result of not attending the dictation. *C.f. Land Ocean Logistics, Inc. v. Aqua Gulf Corp.*, 181 F.R.D. 229, 235 (W.D.N.Y.1998) ("[preclusion is a harsh sanction preserved for exceptional cases where a requested party's failure ... results in prejudice]") (citing *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 71 (2d Cir.1988)); (*Softel, Inc. v. Dragon Med. and Scientific Commc'ns, Inc.*, 1990 WL 164859, *5–6 (S.D.N.Y.1990)). In addition, I do not find that Kartzman's dictation of his records to a court reporter outside of the presence of defendants' counsel—for the sole purpose of rendering legible otherwise illegible records that defendants had lawfully obtained—constitutes a "discuss[ion]" with defense counsel in violation of the terms of the HIPAA release signed by Brusso. Accordingly, Brusso's motion to preclude Kartzman's records is denied.

## II. *Defendants' Summary Judgment Motions*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, to-

---

1. On April 22, 2009, the discovery deadline was extended to May 15, 2009, for the limited purpose of allowing plaintiffs to obtain certain records requested during defendant Imbeault's deposition. (Docket # 44).

gether with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In making this determination, the court must assess whether there exist any disputed material facts and, in so doing, must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 166–67 (2d Cir. 1991). If the court determines that "a rational juror could find in favor of th[e] [non-moving] party," then summary judgment should be denied. *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir.2000).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. 2505; *Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir.1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *see also Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, after which the nonmoving party must come forward with sufficient evidence to support a jury verdict in its favor; the motion will not be defeated based upon conjecture, surmise or the existence of "metaphysical doubt"

concerning the facts. *Bryant v. Maffucci*, 923 F.2d at 982 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). The party seeking to avoid summary judgment "must do more than make broad factual allegations and invoke the appropriate statute. The [party] must also show, by affidavits or as otherwise provided in Rule 56 . . ., that there are specific factual issues that can only be resolved at trial." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir.1995); *see also Driscoll v. Townsend*, 60 F.Supp.2d 78, 80 (W.D.N.Y.1999).

As the Second Circuit has explained:

[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution . . . . [I]t must be kept in mind that only by reference to the substantive law can it be determined whether a disputed fact is material to the resolution of the dispute.

*Gallo v. Prudential Residential Serv. Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir.1994).

In the case at bar, defendants have filed two motions for summary judgment. The first contends that no rational jury could conclude that the February 2, 2004 motor vehicle accident caused Brusso to sustain a "serious injury" within the meaning of Section 5102 of the New York Insurance Law. The second argues that Brusso's claims are barred by the release that she signed in July 2004.[2]

---

**2.** Brusso claims that the Court should reject defendants' release argument because they did not raise it in their initial motion for summary judgment. (Docket # 87 at 2). First, I note that release is raised as an affirmative defense in defendants' answer. (*See* Docket # 15 at ¶¶ 22–24). Second, the Federal Rules of Civil Procedure do not limit the

number of dispositive motions that a party may bring, although the more conventional and efficient approach is to file one motion containing all bases for relief. *See* Fed. R.Civ.P. 56. Significantly, in this case, defendants filed both motions within the deadline set by this Court for filing dispositive motions.

## A. *"Serious Injury" Under New York Insurance Law*

"New York substantive law governs this diversity action pursuant to well-settled principles governing the choice of law in diversity actions." *Williams v. Ritchie,* 139 F.Supp.2d 330, 334 (E.D.N.Y.2001) (applying New York law to diversity action asserting claims brought under New York no-fault statute) (citing *Lee v. Bankers Trust Co.,* 166 F.3d 540, 545 (2d Cir.1999)).

New York Insurance Law Section 5104(a), commonly referred to as the no-fault insurance statute, bars recovery for basic economic loss arising out of personal injuries caused by "negligence in the use or operation of a motor vehicle in this state." N.Y. Ins. Law § 5104(a). Relevant to this action, the no-fault statute permits recovery for "non-economic loss" only in instances of serious injury. *Id.* "Non-economic loss" is defined under the statute to mean "pain and suffering and similar non-monetary detriment." *Id.* at § 5102(c). "Serious injury," in turn, is defined to mean:

> a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one

hundred eighty days immediately following the occurrence of the injury or impairment.

N.Y. Ins. Law § 5102(d).

New York's no-fault law was enacted in 1973 in order to "promot[e] prompt resolution of injury claims, limit [ ][the] cost to consumers and alleviat[e] unnecessary burdens on the courts." *Pommells v. Perez,* 4 N.Y.3d 566, 570–71, 797 N.Y.S.2d 380, 830 N.E.2d 278 (2005). The law requires every car owner to carry insurance to compensate injured parties for "basic economic loss" caused by the use or operation of a vehicle regardless of fault. *Id.* at 571, 797 N.Y.S.2d 380, 830 N.E.2d 278. *See* N.Y. Ins. Law § 5103. Former Chief Judge Kaye characterized the statutory scheme as a "compromise: prompt payment for basic economic loss to injured persons regardless of fault, in exchange for a limitation on litigation to cases involving serious injury." *Id.*

"[T]he legislative intent underlying the No–Fault Law [thus] was to weed out frivolous claims and limit recovery to significant injuries." *Dufel v. Green,* 84 N.Y.2d 795, 798, 622 N.Y.S.2d 900, 647 N.E.2d 105 (1995). *Accord Toure v. Avis Rent A Car Sys., Inc.,* 98 N.Y.2d 345, 350, 746 N.Y.S.2d 865, 774 N.E.2d 1197 (2002). Consistent with that legislative intent, "[i]t is incumbent upon the court to decide in the first instance whether the plaintiff has a cause of action to assert within the meaning of the statute ... by determin[ing] whether the plaintiff has established a prima facie case of sustaining serous injury." *Licari v. Elliott,* 57 N.Y.2d 230, 237, 455 N.Y.S.2d 570, 441 N.E.2d 1088 (1982). "If it can be said, as a

---

(*See* Docket # 32). In addition, counsel for defendants explained during oral argument that her failure to raise the release argument in the first motion owed to simple oversight, and Brusso has shown no prejudice by having had to respond to the second motion. As to

the second motion, the Court set a briefing scheduling that allowed plaintiffs ample time to file their response. (Docket # 79, 85, 87, 91). Accordingly, I conclude that these facts do not justify rejecting defendants' second summary judgment motion.

matter of law, that [the] plaintiff suffered no serious injury ..., then plaintiff has no claim to assert and there is nothing for the jury to decide." *Id.*

On a motion for summary judgment on the issue of serious injury, "a defendant has the initial burden of establishing a 'prima facie case that the plaintiff's injuries are not serious.'" *Sanchez v. Travelers Cos.,* 658 F.Supp.2d 499, 507 (W.D.N.Y.2009) (quoting *Gaddy v. Eyler,* 79 N.Y.2d 955, 957, 582 N.Y.S.2d 990, 591 N.E.2d 1176 (1992)); *Williams v. Ritchie,* 139 F.Supp.2d at 334. A defendant may satisfy this burden by providing a physician's report that concludes, based upon objective evidence, that the plaintiff either has no injuries or has recovered from them. *See Toure v. Avis Rent A Car Sys., Inc.,* 98 N.Y.2d at 351–52, 746 N.Y.S.2d 865, 774 N.E.2d 1197. *See also Gaddy v. Eyler,* 79 N.Y.2d at 956, 582 N.Y.S.2d 990, 591 N.E.2d 1176 (defendant established "prima facie case that plaintiff's injuries were not serious through the affidavit of a physician who examined her and concluded that she had a normal neurological examination").

The burden then shifts to the plaintiff to come forward with objective evidence that she suffered a serious injury within the meaning of the no-fault law. *Sanchez v. Travelers Cos., Inc.,* 658 F.Supp.2d at 507; *Williams,* 139 F.Supp.2d at 334. "[S]ubjective complaints alone are not sufficient." *Toure,* 98 N.Y.2d at 350, 746 N.Y.S.2d 865, 774 N.E.2d 1197. As long as the plaintiff adduces sufficient objective evidence from which a jury could find that she sustained a serious injury, summary judgment must be denied "notwithstanding some contrary probative evidence." *Nasrallah v. Helio De,* 1998 WL 152568, *8 (S.D.N.Y.1998) (Sotomayor, D.J.).

**1. Defendants' Prima Facie Case of No Serious Injury**

In support of their motion, defendants have submitted a report from Dr. James J. White, M.D. ("White"), who performed an independent medical examination ("IME") of Brusso on June 3, 2009. (Docket # 54–26; 54–27). In preparing his report, White reviewed Brusso's relevant past medical records, including Kartzman's, in addition to Brusso's sworn responses to defendants' interrogatories and her deposition testimony. (*Id.*).

As part of his physical examination of Brusso, White evaluated her range of motion in her neck and lower back. White found that in her cervical neck, Brusso exhibited 19 degrees rotation to the left and 21 degrees rotation to the right. (Docket # 54–26 at 6). White described a normal range of rotation as between 70 and 90 degrees. (*Id.*). White further found that Brusso had 12 degrees of flexion and 15 degrees of extension in the cervical spine, compared with a normal flexion and extension of 45 degrees. (*Id.*). Based on his review of Brusso's MRI films and the discogram, White concluded that Brusso was "magnif[ying]" her symptoms because the areas of her cervical spine that the diagnostic studies had identified as problematic would not produce the degree and type of reduced range of motion that Brusso exhibited during the examination. (Docket # 54–27 at 45). White made similar findings with respect to Brusso's exhibited reduced range of motion in her lumbar spine. (*Id.* at 46). White diagnosed Brusso with cervical and lumbar disc degeneration and mild disc bulging without herniation. (Docket # 54–27 at 41). In sum, White concluded that there is "absolutely no evidence that [Brusso] sustained an injury to the spinal axis as a result" of the February 2, 2004 accident. (*Id.* at 47).[3]

---

**3.** White also noted that Brusso denied experiencing problems with neck or back pain in

This Court finds that White's report is sufficient to satisfy defendants' initial burden to establish a prima facie case that Brusso has not suffered a "serious injury" within the meaning of Section 5104. Although defendants have submitted reports from other physicians, consideration of those reports is unnecessary in view of the sufficiency of White's report to satisfy defendants' burden.[4]

### 2. Plaintiff's Evidence

"Whether a plaintiff's evidence of a personal injury meets the statutory threshold ... [is] 'an elusive standard that all too frequently escapes facile and final resolution.'" *Bent v. Jackson*, 15 A.D.3d 46, 788 N.Y.S.2d 56, 57 (1st Dep't 2005) (quoting *Brown v. Achy*, 9 A.D.3d 30, 776 N.Y.S.2d 56, 57 (1st Dep't 2004)). Indeed, the New York Court of Appeals has observed that "in the context of soft-tissue injuries involving complaints of pain that may be difficult to observe or quantify"—such as those asserted in this case, "deciding what is a 'serious injury' can be particularly vexing" and should be approached with a "well-deserved skepticism." *Pommells v. Perez*, 4 N.Y.3d at 571, 797 N.Y.S.2d 380, 830 N.E.2d 278.

Here, Brusso alleges that she has suffered the following categories of serious injury under Section 5102:

(1) permanent consequential limitation of use of a body organ or member;

(2) significant limitation of use of a body function or system; and/or

(3) a medically determined injury or impairment of a non-permanent nature which prevents [her] from performing substantially all of the material acts which constitute [her] usual and customary daily activities for not

less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

(Docket # 61 at ¶ 10). *See* N.Y. Ins. Law § 5102(d).

### a. *"Permanent Consequential Limitation" and "Significant Limitation"*

■ I turn first to the question whether Brusso has raised a triable issue of fact that she sustained a "permanent consequential limitation of use of a body organ or member" or a "significant limitation of use of a body function or system." As to those statutory categories of serious injury, the New York Court of Appeals has explained, "[w]hether a limitation of use or function is 'significant' or 'consequential' (i.e., important) relates to medical significance and involves a comparative determination of the *degree* or *qualitative nature* of an injury based on the normal function, purpose and use of the body part." *Dufel*, 84 N.Y.2d at 798, 622 N.Y.S.2d 900, 647 N.E.2d 105 (emphasis added) (internal citations omitted). To prove the "extent or degree of physical limitation," a plaintiff may submit an expert report that either "designat[es] ... a numeric percentage of a plaintiff's loss of range of motion" or "qualitative[ly] assess[es] ... [her] condition ..., provided that the evaluation has an objective basis and compares [her] limitations to the normal function, purpose and use of the affected body organ, member, function or system." *Toure*, 98 N.Y.2d at 350, 746 N.Y.S.2d 865, 774 N.E.2d 1197. *See Cole v. Allied Waste Indus., Inc.*, 496 F.Supp.2d 257, 264 (S.D.N.Y.2007) ("even absent a specifically designed percentage

---

the past despite her record of treatment with Kartzman. (Docket # 54–7 at 47).

**4.** Brusso objected to several of the reports offered by defendants on the grounds that they were unsworn and thus not admissible. (Docket # 62 at 3–4). Because I do not consider those reports, I need not address whether they are properly before the Court.

of impairment, a medical expert's qualitative assessment of a plaintiff's condition can substantiate a claim of serious injury as long as that assessment has an objective basis and compares plaintiff's limitations to normal functions"); *Madden v. Lee,* 2002 WL 31398951, *5 (S.D.N.Y.2002) ("[w]hether the limitation on the use of a body function is 'permanent' or 'significant' requires a determination of the qualitative nature of the injury in relation to the use of the body part"). The plaintiff's subjective complaints will not satisfy this burden; rather, objective medical proof, premised on more than the plaintiff's subjective complaints, is required. *Toure,* 98 N.Y.2d at 350, 746 N.Y.S.2d 865, 774 N.E.2d 1197; *Mercado v. Lee,* 2008 WL 4963985, *2 (S.D.N.Y.2008) (citing *Dwyer v. Tracey,* 105 A.D.2d 476, 480 N.Y.S.2d 781, 783 (3d Dep't 1984)).

In *Toure,* the plaintiff defeated a motion for summary judgment by submitting an affirmation from a treating neurosurgeon that related the diagnosis of "permanent limitation of his spine and peripheral nervous system" to (1) the "plaintiff's complaints of difficulty in sitting, standing and walking . . . [and] plaintiff's inability to lift heavy objects" and (2) objective findings based on two MRIs and a CT scan that the plaintiff suffered from bulging discs. *Id.* at 352, 746 N.Y.S.2d 865, 774 N.E.2d 1197. Thus, the court found that even though the neurosurgeon had not "ascribe[d] a specific percentage to the loss of range of motion in plaintiff's spine," he had satisfied the qualitative prong of the test by linking the plaintiff's limitations to "objective medical evidence" and comparing those limitations to the "normal function, purpose and use of the body part." *Id.* at 353, 746 N.Y.S.2d 865, 774 N.E.2d 1197.

In opposition to defendants' motion, Brusso has provided affirmations from Holobinko and Zeidman, an affidavit from Czajkowski and an IME report from Dr. Scott J. Beres, D.C. ("Beres"). (Docket # 61–6, 63, 64, 65). As an initial matter, defendants object to Brusso's reliance on the Holobinko and Zeidman affirmations and Czajkowski's affidavit because none of the doctors were disclosed as experts, although each "draw[s] ultimate conclusions as to the causation of the plaintiff's condition." (Docket # 82 at 2, 7–9).

Defendants' argument is unavailing. As discussed above, Brusso treated with each of the three doctors. A treating physician may offer an opinion as to the cause of a plaintiff's injuries without being required to submit a written report under Rule 26 of the Federal Rules of Civil Procedure if the physician acquired that opinion through treatment of the plaintiff and is not otherwise a "witness retained or specially employed to provide expert testimony." Fed.R.Civ.P. 26. *See Salas v. United States,* 165 F.R.D. 31, 33–34 (W.D.N.Y.1995) (collecting cases). *See* Fed.R.Civ.P. 26(a)(2) advisory committee's note, 1993 amendment ("[a] treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report"). A treating physician need not be disclosed as an expert unless "the doctor's opinion testimony extends beyond the facts disclosed during care and treatment of the patient and the doctor is specifically retained to develop opinion testimony." *Peck v. Hudson City Sch. Dist., Hudson, N.Y.,* 100 F.Supp.2d 118, 121 (N.D.N.Y.2000). Here, no evidence exists that any of the physicians was specially retained by Brusso to offer opinion testimony in this case, nor have defendants demonstrated that any of their opinions exceed the scope of the facts disclosed during their treatment of Brusso. *Salas v. United States,* 165 F.R.D. at 33 ("whether the injuries for which [the physician] treated the plaintiff can be causally related to the accident would appear to be within the

scope of the patient's care and treatment"). Accordingly, I find that the affirmations of Holobinko and Zeidman, and Czajkowski's affidavit are properly before this Court.

Each is summarized below:

(1) *Zeidman's Affirmation:* Brusso treated with Seth M. Zeidman, M.D., a neurosurgeon, for a four-month period in 2006, beginning on May 18 of that year. His affirmation is dated August 31, 2009, but provides no indication that he has seen Brusso or reviewed her medical condition since 2006. (Docket # 64 at ¶ 2 and Ex. A).

At the time of Brusso's initial appointment with Zeidman, she complained of pain in her neck and back and tingling and weakness in her arms and legs. (*Id.* at ¶¶ 4, 7). She stated that although she had experienced previous problems with her back in 2000 and her neck in 2003, "her symptoms became much worse following the motor vehicle accident of February 2, 2004." (*Id.* at ¶ 5). Zeidman compared pre—and post-accident MRI films of Brusso's cervical spine and lumbar spine. He concluded that both MRIs of her cervical spine (pre—and post-accident) showed a disc bulge at C6–7 (*id.* at ¶ 8) and that both MRIs of her lumbar spine "were essentially normal" (*id.* at ¶ 9).

At Zeidman's recommendation, Brusso underwent a cervical discogram on June 22, 2006, which revealed "a central protrusion with radial tear and leaking at C6–7 as well as a small radial tear with central protrusion at C4–5." (*Id.* at ¶ 11). As Zeidman's affirmation explains, a radial tear is "a rupture of the outer lining of the disc used to cushion the vertebra bones in the spine" that results "in a leaking out or protrusion of the inner material ... which can then compress and potentially damage the nerve roots in the spine causing pain and symptoms." (*Id.* at ¶ 12). Zeidman recommended that Brusso undergo a cer-

vical dissectomy and fusion at C6–7, a surgical procedure. (*Id.* at ¶ 13).

In his affirmation, Zeidman opines that "given [Brusso's] history, physical complaints and results of diagnostic studies, the radial tearing of the disc was caused by the motor vehicle accident of February 2, 2004." (*Id.* at ¶ 17). Zeidman further opines that the tear is "a permanent injury that will not heal without surgical intervention" and that has "resulted in a significant limitation of use of her neck thereby causing pain with radiation and decreased range of motion which will significantly affect her daily activities." (*Id.* at ¶¶ 18–19).

(2) *Holobinko's Affirmation:* Dr. Holobinko's affirmation states that she has been Brusso's primary care physician since approximately 2001. (Docket # 65 at ¶ 2). On February 4, 2004, two days after the motor vehicle accident at issue in this case, Holobinko treated Brusso for complaints of "severe pain and discomfort in her neck with headaches." (*Id.* at ¶¶ 3–4). For the first year following the accident, Brusso received massage therapy for her injuries. (*Id.* at ¶ 6). When her complaints did not subside despite that treatment, Brusso began acupuncture—a course of treatment that lasted approximately five months. (*Id.* at ¶ 7). During that period, Holobinko noted "decreased range of motion and muscle spasm in both the cervical and lumbar spines." (*Id.* at ¶ 8).

In May 2006, Holobinko referred Brusso to a neurosurgeon, Dr. Zeidman, who ordered a discogram, which revealed a radial tear at C6–7 and a smaller tear at C4–5. (*Id.* at ¶¶ 9–10). Based on these findings, Zeidman recommended a cervical dissectomy and fusion at C6–7. (*Id.* at ¶ 11). Because of "payment" issues, Brusso has not undergone the recommended surgery. (*Id.* at ¶ 12).

Holobinko's affirmation notes that Brusso was on disability leave from work for five weeks in 2007, but returned to work for financial reasons even though her job exacerbated "her symptoms and pain." (*Id.* at ¶¶ 13–14). Holobinko referred Brusso to a pain management physician in October 2008, who prescribed pain medication and injections. (*Id.* at ¶ 17). Holobinko's affirmation further notes that Brusso has continued to experience severe pain and muscle spasm and has experienced no "long-term" relief despite "multiple sessions of physical therapy, pain medication, chiropractic care and acupuncture." (*Id.* at ¶¶ 14–16).

Holobinko opines that the February 2004 accident caused "injuries to [Brusso's] cervical and lumbar spines" and that those injuries "have significantly affected her daily activities." (*Id.* at ¶¶ 18–19). Finally, Holobinko opines that "[g]iven that [her] symptoms have not resolved with conservative treatment over the five (5) years since the happening of the accident, [Brusso] has suffered a permanent injury to her cervical spine as a result of the accident." (*Id.* at ¶ 20).

(3) ***Czajkowski's Affidavit:*** Brusso treated with Dr. Czajkowski from 2006 until at least September 2009, when Czajkowski signed his affidavit. (Docket # 63 at ¶¶ 2, 9). On Brusso's first visit, Czajkowski assessed the range of motion in her cervical and lumbar spine, and his affidavit includes a chart reflecting his findings. (*Id.* at ¶¶ 6, 7). According to the chart, Brusso's most significant decrease in range of motion was a fifteen degree, or 33.33%, reduction in the extension of her cervical spine compared with normal range of motion. (*Id.* at ¶ 6). The affidavit does not reference any range of motion findings on any other visits, although his attached office chart reflects that he noted improved range of motion on several subsequent visits. (*Id.* at Ex. A (notes for 4/6/07, 6/6/07, 6/26/07)).

Czajkowski opines that Brusso suffered injuries to her cervical and lumbar spine as a result of the February 2, 2004 accident and that those injuries are permanent "given the length of time that has transpired since the happening of the accident with little to no improvement." (*Id.* at ¶¶ 10–11). Czajkowski further opines that "given the restrictions in activities of daily living," Brusso has "suffered a significant limitation and disability" as a result of her injuries. (*Id.* at ¶ 12).

(4) ***Beres's Report:*** On February 22, 2008, Dr. Beres conducted an IME of Brusso. (Docket # 61–6). In preparing the IME report, Beres reviewed Brusso's MRIs, X-rays and the discogram, as well as other medical records which did not include Kartzman's records. (*Id.* at 3). Beres diagnosed Brusso with "cervical spine radiculitis, cervicalgia and non-allopathic cervical spine subluxation complex." (*Id.* at 2). His report states that Brusso's injuries "*appear to be* causally related" to the accident and that it is his opinion that her "current level of impairment is that of a moderate partial disability that *may* be permanent." (*Id.* at 3 (emphasis added)). Beres's report observes that Brusso exhibited a diminished range of motion upon physical examination, although the degree of diminution is not specified. (*Id.*).

(5) ***Analysis of Brusso's Physicians' Reports:*** For the reasons discussed more fully below, I conclude that Brusso has failed to meet her burden to establish a triable issue of fact that she suffered injuries as a result of the accident that constitute either a "permanent consequential limitation of use of a body organ or member" or a "significant limitation of use of a body function or system." Because this conclusion turns on the adequacy of the

plaintiffs' physicians' reports, I will address each in turn.

Beginning with Zeidman's affirmation, I note that although his opinion is founded upon objective medical evidence—the discogram, *see Mastrantuono v. United States*, 163 F.Supp.2d 244, 256 (S.D.N.Y. 2001) ("discogram constitutes objective medical evidence of injury"), he nonetheless fails to offer either a quantitative or qualitative assessment of the effect that the radial tear in Brusso's neck has had on her functioning. Zeidman simply states in conclusory fashion that "the injury to Ms. Brusso's cervical spine has resulted in a significant limitation of use of her neck thereby causing pain with radiation and decreased range of motion which will significantly affect her daily activities." (Docket # 64 at ¶ 19).

Zeidman does not provide "a numeric percentage of [Brusso's] loss of range of motion," nor "compare [ ][her] limitations to the normal function, purpose and use of the affected body organ, member, function or system." *Toure*, 98 N.Y.2d at 350, 746 N.Y.S.2d 865, 774 N.E.2d 1197. That failure to relate the objective proof of a radial tear to either a quantitative loss in range of motion or a qualitative assessment of Brusso's limitations compared to normal functions renders Zeidman's affirmation insufficient to establish a prima facie case of serious injury. *See, e.g., Cole v. Allied Waste Indus., Inc.*, 496 F.Supp.2d at 265 (plaintiff's proof of serious injury was adequate to support jury verdict where expert "linked [p]laintiff's injuries with certain limitations in life activities such as sitting, walking, driving and bending"); *Gualtieri v. Farina*, 283 F.Supp.2d 917, 924 (S.D.N.Y.2003) ("[m]ere conclusory statements by [plaintiff's] physician are not sufficient to raise a triable issue of fact") (quoting *Carter v. Geldis*, 2002 WL 1159904, *6 (E.D.N.Y.2002)); *Toure*, 98 N.Y.2d at 352, 746 N.Y.S.2d 865, 774 N.E.2d 1197 (plaintiff established prima facie case of significant limitation where physician related objective findings of injury to plaintiff's "difficulty in sitting, standing and walking for extended periods of time and plaintiff's inability to lift heavy objects at work"); *Bent v. Jackson*, 15 A.D.3d 46, 788 N.Y.S.2d 56, 59 (1st Dep't 2005) (plaintiff failed to establish prima facie case of significant limitation where doctor noted in conclusory fashion that plaintiff's injuries affected " 'his daily living as well as his employment' and will cause 'ensuing functional disabilities [a]ffecting [plaintiff] for the rest of his life' ").

Turning next to Czajkowski's affidavit, I begin by noting that unlike Zeidman's affirmation, Czajkowski's affidavit does provide a quantitative assessment of Brusso's cervical limitations. Specifically, Czajkowski states that during Brusso's first appointment with him in 2006, she exhibited a 15 degree (33%) reduction in one aspect of her cervical range of motion. Czajkowski's affidavit is silent, however, as to whether Brusso's range of motion improved with treatment or what her range of motion was at the time he prepared the affirmation three years later. Although a 33% reduction in range of motion, coupled with the discogram findings, would constitute a prima facie case of significant limitations, I do not find that Czajkowski's affidavit can reasonably be read to conclude that Brusso has sustained a consequential or significant loss of motion. *See Gualtieri v. Farina*, 283 F.Supp.2d 917, 925 (S.D.N.Y.2003) ("[i]n order to make out a prima facie case for a significant limitation, plaintiff must show a significant limitation in both degree and duration").

Although Czajkowski's affidavit itself contains no further findings or observations concerning Brusso's range of motion, his accompanying records contain notes reflecting improvement in Brusso's range

of motion after her initial visit. Specifically, Czajkowski's note from his treatment of Brusso on April 6, 2007 states, "[r]ange of motion remains within normal limits;" his note from June 6, 2007 states, "[r]anges of motion are also improved with lessening of muscle spasms;" and his note from June 26, 2007 observes, "motion remains within limits." (Docket # 63 at Ex. A). Considering the failure of Czajkowski's affidavit to address the subsequent changes to Brusso's range of motion following her initial evaluation, I find that Czajkowski's affidavit cannot be considered credible proof of a significant or permanent limitation; not only is his quantitative assessment of Brusso's range of motion three years' old, but it is based solely on his first examination of Brusso prior to any chiropractic treatment. *See, e.g., Gualtieri v. Farina,* 283 F.Supp.2d at 926 (defendant failed to establish prima facie case of significant limitation where physician's affidavit was based upon range of motion findings made three years earlier and "did not indicate that his opinion was based upon any recent medical examination"); *Bent v. Jackson,* 15 A.D.3d 46, 788 N.Y.S.2d 56, 58 (1st Dep't 2005) ("[i]n order to raise a triable issue of fact, plaintiffs' claims that range of motion is limited must be sustained by objective medical findings that are based on a recent examination of the plaintiff") (internal quotation omitted). *See also Williams,* 139 F.Supp.2d at 341 ("[n]or is a limitation of motion that has resolved sufficient to establish significant limitation").

Czajkowski's affidavit also fails to raise a triable issue of fact of serious injury based upon his qualitative assessment. On this issue, his affidavit simply states, "[a]dditionally, it is my opinion that given the restrictions in activities of daily living, the patient has suffered a significant limitation and disability as a result of the injuries from this accident." (*Id.* at ¶ 12). This assertion, like the one made in Zeidman's affirmation, is simply too conclusory to meet plaintiffs' burden at this summary judgment stage because it fails altogether to "compare [ ] [Brusso's] limitations to the normal function, purpose and use of the affected body organ, member, function or system." *See Toure,* 98 N.Y.2d at 350, 746 N.Y.S.2d 865, 774 N.E.2d 1197. *Nasrallah v. Helio De,* 1998 WL 152568 at *7 ("plaintiff's physician's conclusory statements as to significance or permanence, unsupported by facts detailing the extent of the limitation, [are] insufficient").

Holobinko's affirmation and Beres's report suffer from the same fatal inadequacies. Neither offers any quantitative assessment of Brusso's limitations. Nor does either attempt to relate her limitations to her normal functioning or activities. In addition, Beres's report does not even reflect an opinion that Brusso has suffered a permanent or significant limitation.

In sum, taken alone or together, the four physicians' affirmations and reports fail to raise a triable issue of fact that Brusso suffered a "permanent consequential limitation of use of a body organ or member" or a "significant limitation of use of a body function or system" as a result of the accident.

**b.  *The 90/180 Day Impairment***

■ Brusso also claims that she suffered a serious injury as a result of a "medically determined injury or impairment of a non-permanent nature" that prevented her from performing substantially all of her usual and customary daily activities for 90 of the first 180 days following the accident. *See* N.Y. Ins. Law § 5102. Under this category, "a plaintiff must prove that she was 'curtailed from performing [her] usual activities to a great extent rather than some slight curtailment.'" *Gualtieri,* 283 F.Supp.2d at 924–25 (quoting *Licari v. Elliott,* 57 N.Y.2d

230, 236, 455 N.Y.S.2d 570, 441 N.E.2d 1088 (1982)). As with the other categories of injury, Brusso's allegations that her injuries fall within this category must be substantiated by objective medical proof; self-serving statements are insufficient to raise a triable issue of fact. *Hyacinthe v. United States,* 2009 WL 4016518, *12 (E.D.N.Y.2009) ("objective medical findings" are required to prove 90/180 impairment); *Gualtieri,* 283 F.Supp.2d at 925 (no prima facie case of serious injury under the 90/180 category where plaintiff's "self-serving testimony that she can no longer clean her house or hold her baby for long periods of time [ ] is unsubstantiated"); *Jones v. Sharpe,* 99 A.D.2d 859, 472 N.Y.S.2d 779, 780 (3rd Dep't) ("[m]ere allegations of limitation of body functions without medical proof are insufficient to demonstrate the existence of a genuine factual issue") (citing *Daviero v. Johnson,* 88 A.D.2d 732, 451 N.Y.S.2d 858 (3rd Dep't 1982)), *aff'd,* 63 N.Y.2d 645, 479 N.Y.S.2d 520, 468 N.E.2d 702 (1984). In other words, a plaintiff's deposition testimony alone is insufficient to defeat a motion for summary judgment. *Madden v. Lee,* 2002 WL 31398951 at *6 (citing *Morris v. Pascall,* 259 A.D.2d 602, 686 N.Y.S.2d 796 (2d Dep't 1999)).

The record before the Court on this motion establishes that Brusso returned to full-time employment two days following the accident. Further, Brusso has offered no medical proof establishing that any of her usual and customary activities were significantly curtailed during 90 of the first 180 days following the accident. Rather, Brusso has offered only her own deposition testimony describing that she no longer engages in certain household chores, such as vacuuming and laundry, and no longer enjoys bicycling or camping without pain. No evidence exists in the record establish-

ing the frequency with which she engaged in those activities prior to the accident or that those activities became more difficult during 90 of the first 180 days following the accident. In fact, Brusso testified that immediately after the accident she was still able to play tennis with her children,[5] but has not been able to do so for the past few years. Without more, these allegations are insufficient to establish a prima facie case of serious injury under the 90/180 category. *See, e.g., Hyacinthe v. United States,* 2009 WL 4016518 at *13 (plaintiff's testimony that plaintiff could no longer play sports with children was insufficient to establish prima facie case where there was no evidence that such recreational activities were "usual and customary"); *Mercado v. Lee,* 2008 WL 4963985 at *6 (inability to participate in sports and interact with sons was insufficient to raise a triable issue of fact under 90/180 category because the plaintiff "ha[d] not provided evidence showing that sports and interacting with his sons were a substantial part of his daily activities"); *Arrowood v. Lowinger,* 294 A.D.2d 315, 742 N.Y.S.2d 294, 295 (1st Dep't 2002) (unsubstantiated claims of inability to perform household chores was insufficient to survive motion for summary judgment).

### c. *Failure of Plaintiffs' Physicians' Reports to Address Brusso's Preexisting Medical Condition*

Plaintiffs' proof fails to raise a triable issue of fact as to serious injury for another, independent reason: Brusso's physicians' affirmations and reports fail to address the effect, if any, that her preexisting medical condition had on her injuries. Despite testifying during her deposition that she treated with a chiropractor, Dr. Kartzman, for "[j]ust two or three visits" in the 1980s for dizziness

5. Holobinko's records contain a post-accident note dated July 7, 2004 stating, "[p]atient [s]tates that she has remained active, walking 12,000 steps daily." (Docket # 65, Ex. A).

(Docket # 54, Ex. G at 19–20), the record in this case plainly establishes that she treated with Kartzman for back, shoulder and neck pain over the course of eight years immediately preceding the accident. (Docket # 54–17). Specifically, his records reveal that she received chiropractic treatment on four occasions in 1995, nine occasions in 1996, six occasions in 1997, four occasions in 1998, five occasions in 1999, five occasions in 2000, two occasions in 2001, seven occasions in 2002 and four occasions in 2003. *Id.*

During the course of her treatment with Kartzman, Brusso complained of and was treated for low back pain, neck pain, numbness, tingling and weakness in her extremities, and headaches—all complaints that she now attributes to the February accident at issue in this case. (*Id.*). In fact, although she testified at her deposition that she had never been in an accident before the February 2004 accident at issue in this case (Docket # 54, Ex. G at 77), Kartzman's records (as well as Holobinko's) reveal that Brusso reported that she was involved in a motor vehicle accident in December 2002 resulting in "[i]ncreased neck pain with increased use."[6] (Docket # 54–17 at 22). Indeed, as recently as three months before the accident, Brusso complained of continuing neck and back pain and headaches, and Kartzman noted decreased cervical rotation. (*Id.* at 25).

While causation and credibility are generally issues that are distinct from the issue of serious injury, *see, e.g., Rule v. Brine, Inc.,* 85 F.3d 1002, 1011 (2d Cir. 1996) ("[a]ssessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment"); *Heisler v. MPT New York, Inc.,* 2003 WL 23350126, *4 (W.D.N.Y.2003) ("issue of causation is separate and distinct from the issue of whether [the plaintiff] suffered 'serious injury' as a matter of law"), a plaintiff's preexisting medical condition may be relevant to serious injury on a motion for summary judgment. *See Pommells,* 4 N.Y.3d at 572, 797 N.Y.S.2d 380, 830 N.E.2d 278 ("even where there is objective medical proof, when additional contributing factors interrupt the chain of causation between the accident and the claimed injury—such as ... a preexisting condition—summary dismissal of the complaint may be appropriate"). Where, as here, a defendant's proof that the plaintiff has not sustained a serious injury as a result of the motor vehicle accident at issue rests in part on evidence that she had a preexisting medical condition prior to the accident,[7] the plaintiff must address that contention in her medical reports. *See, e.g., Rhone v. United States,* 2007 WL 3340836, *6 (S.D.N.Y.2007) ("when a defendant submits persuasive evidence that a plaintiff's alleged pain and injuries are related to a pre-existing condition, the plaintiff has the

---

**6.** At Brusso's deposition, she also testified that she could not recall having been involved in any motor vehicle accidents after the February 2, 2004 accident (Docket # 54, Ex. G at 109), although defendants have submitted a copy of a police report indicating that she was involved in an accident three months later on May 10, 2004, in which her car went off the road and into a ditch. (Docket # 54–28).

**7.** Defendants' expert report summarizes in significant detail Brusso's pre-accident medical history of neck and back pain. (*See* Docket # 54–26 at 14–19; 54–27 at 40–41). The report finds that Brusso suffered from "symptoms [similar to the injuries she attributes to the accident] dating back to at least 1995" and that Brusso "has had ongoing subjective complaints that have never been verified by a diagnostic study." (Docket # 54–27 at 41, 44). Relying on this past medical history, among other things, the report opines that "there is absolutely no evidence that [Brusso] sustained an injury to the spinal axis as a result of the motor vehicle accident of 2/02/04." (*Id.* at 47).

burden to come forward with evidence addressing the defendant's claimed lack of causation; if the plaintiff fails to meet that burden, the defendant is entitled to summary dismissal of the complaint") (quoting *Arenes v. Mercedes Benz Credit Corp.*, 2006 WL 1517756, *8 (E.D.N.Y.2006)); *Pommells*, 4 N.Y.3d at 575–76, 797 N.Y.S.2d 380, 830 N.E.2d 278 (summary judgment for defendants properly granted where the plaintiff's submission "failed to address" and "left wholly unanswered" the effect of plaintiff's medical history on his claimed injuries).

Of course, a court should not resolve at the summary judgment stage any genuine disputes between the parties as to the effect of that preexisting condition on the plaintiff's asserted injuries. Resolution of those factual issues must be reserved for the jury. But, the plaintiff must come forward with at least enough evidence from which a rational jury could conclude that the accident, and not the preexisting condition, was the cause of her claimed injuries. *Pommells*, 4 N.Y.3d at 579–80, 797 N.Y.S.2d 380, 830 N.E.2d 278 ("While plaintiff provided [an] expert report of specific losses of range of motion in plaintiff's spine, opining that plaintiff suffered serious and permanent injuries which were causally related to the accident ..., plaintiff did not refute defendant's evidence of a preexisting degenerative condition.... In the absence of any such evidence, ... defendant was entitled to summary dismissal of the complaint."). *See also Arenes v. Mercedes Benz Credit Corp.*, 2006 WL 1517756 at *9 (plaintiffs' expert report insufficient to raise triable issue of fact where it opined in conclusory fashion that plaintiffs' injuries were caused by motor vehicle accident, but did not address plaintiffs' preexisting degenerative conditions); *Rhone v. United States*, 2007 WL 3340836 at *9 (granting summary judgment to defendant because physicians' affirmations that did not consider plaintiff's medical

history were insufficient to rebut defendant's evidence that plaintiff's injuries were caused by a preexisting condition); *Eisen v. Walter & Samuels, Inc.*, 215 A.D.2d 149, 626 N.Y.S.2d 109, 109 (1st Dep't 1995) (granting summary judgment on issue of serious injury, noting, *inter alia*, "plaintiff's physician's affirmations even failed to mention plaintiff's pre-existing multiple sclerosis"). This, Brusso has not done.

In their reports, Czajkowski and Beres make no reference to Brusso's prior history of soft tissue complaints. (Indeed, the form that Brusso signed at her first appointment with Czajkowski states "N/A" in response to the question, "Name of previous chiropractor and reason for that visit" (Docket # 63, Ex. A) and Beres's report reveals that he did not review Kartzman's records (Docket # 61–6 at 3)). While Zeidman refers in conclusory nature to the fact that Brusso "advised that although she had problems with her back in 2000 and her neck in 2003, her symptoms became much worse following the [accident]," his affirmation offers no assessment of the effect of that condition on her current injuries or even suggestion that he reviewed Kartzman's records or was aware of the extent of Brusso's treatment with him. Finally, Holobinko's affirmation does not mention Kartzman or reveal familiarity with the extent of Brusso's treatment with him or her prior complaints of neck and back injuries. (Docket # 65). In sum, this record is devoid of any evidence rebutting defendants' proof that Brusso suffered from a preexisting condition giving rise to the same type of injuries that she attributes to the accident, and summary judgment for defendants is therefore appropriate. *See Rhone*, 2007 WL 3340836 at *9; *Pommells*, 4 N.Y.3d at 575, 580, 797 N.Y.S.2d 380, 830 N.E.2d 278.

For all the of the reasons stated above, I find that Brusso has failed to raise triable issue of fact that she sustained a serious injury within the meaning of the New York no-fault statute. Accordingly, defendants' motion for summary judgment on that issue is granted.

### B. *Release of Claims*

Having granted defendants' motion for summary judgment on plaintiffs' claims of serious injury, I decline to address defendants' motion for summary judgment on their affirmative defense of release.

### C. *Loss of Consortium Claim and Counterclaim for Contribution*

Dismissal of Wayne Brusso's claim for loss of consortium follows from the dismissal of his wife's claims under the no-fault law. *See Jones v. United States*, 408 F.Supp.2d 107, 126 (E.D.N.Y.2006) ("a claim for loss of consortium 'is a derivative action and, as such, its viability is dependent on the viability of a primary cause of action' ") (quoting *Panczykoski v. Laborers Int'l Union of N. Am.*, 2000 WL 387602, *14 (W.D.N.Y.2000)).

 In addition, defendants' counterclaim for contribution and indemnification against Wayne Brusso also must be dismissed. A claim for contribution does not accrue until the party seeking contribution makes payment. *E.g., Tetens v. Elston Realty Corp.*, 108 A.D.2d 981, 484 N.Y.S.2d 966, 967–68 (3d Dep't 1985) (citing *Blum v. Good Humor Corp.*, 57 A.D.2d 911, 394 N.Y.S.2d 894 (2d Dep't 1977)). Because judgment will be entered for defendants in accordance with this decision, no payment will be made by defendants for which contribution could be sought.

### CONCLUSION

For the reasons stated above, plaintiffs' motion to preclude the records of Dr. Kartzman (**Docket # 61**) is **DENIED**; de-

fendants' motion for summary judgment on the issue of "serious injury" (**Docket # 58**) is **GRANTED**; defendants' motion for summary judgment on the issue of the release of claims (**Docket # 68**) is **DENIED as MOOT**. Plaintiffs' claims and defendants' counterclaim for contribution are hereby **DISMISSED,** and the Clerk of the Court is directed to enter judgment in favor of defendants and close the case.

**IT IS SO ORDERED.**